PEOPLE v SULLIVAN

Opinion of the Court

1. Criminal Law—Instructions—Allen Charge.

A charge to the jury which instructs them that they must examine the questions submitted to them with candor and with a proper regard and deference to the opinions of each other, and that the verdict must be that of each juror, the result of his own convictions and not a mere acquiescence in the conclusion of his fellows, and then urges them to reach a verdict if they can conscientiously do so, the so-called *Allen* charge, is not per se coercive; any claim of coercion must be determined on a case-by-case basis *(Allen v United States,* 164 US 492 [1896]).

2. Criminal Law—Instructions—Jury.

A charge to the jury should not be used if the instruction given can cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement.

3. Criminal Law—Instructions—Allen Charge.

A supplemental *Allen* charge did not result in a coerced verdict where, in fact, the great care by the trial judge and the extensive thought evidenced by the jury in asking for re-instructions as to particular verdicts produced a verdict quite appropriate to the admitted facts.

4. Criminal Law—Instructions—Allen Charge.

Prospectively from August 2, 1974, an ABA standard jury instruction permitting an instruction which informs the jury "(i) that in order to return a verdict, each juror must agree thereto; (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; (iii) that each juror must decide the case for himself, but only after an

References for Points in Headnotes

[1–7] 47 Am Jur 2d, Jury § 13.
    53 Am Jur, Trial §§ 759, 804.
    Rule of reasonable doubt as applicable to reasonable doubt on part of individual juror, 137 ALR 394.

impartial consideration of the evidence with his fellow jurors; (iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict", is adopted; any substantial departure therefrom shall be grounds for reversible error (ABA standard jury instruction 5.4).

DISSENTING OPINION

T. G. KAVANAGH and LEVIN, JJ.

5. CRIMINAL LAW—INSTRUCTIONS—ALLEN CHARGE—DEADLOCKED JURY —COERCED VERDICT.

*An ABA standard jury instruction which informs the jury "(i) that in order to return a verdict, each juror must agree thereto; (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors; (iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict", is an acceptable instruction if given before the jury retires to deliberate; however, once a deadlock develops the only purpose to be served by any such instruction given at that time is to coerce a verdict and this is improper (ABA standard jury instruction 5.4).*

6. CRIMINAL LAW—INSTRUCTIONS—ALLEN CHARGE—DEADLOCKED JURY.

*Section of an ABA standard instruction providing that "[i]f it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a)" and that "[t]he court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals" should be eliminated from the section regarding length of deliberations and deadlocked jury (ABA standard jury instruction 5.4).*

7. Criminal Law—Jury—Coerced Verdict.
   *Conviction should be set aside because the jury was coerced into a verdict.*

Appeal from Court of Appeals, Division 1, Quinn, P. J., and V. J. Brennan and O'Hara, JJ., affirming Wayne, Victor J. Baum, J. Submitted March 14, 1974. (No. 13 March Term 1974, Docket No. 54,636.) Decided August 2, 1974.

Charles Oscar Sullivan was convicted of voluntary manslaughter. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Dominick R. Carnovale,* Chief, *Appellate Department,* and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Irving Tukel,* for defendant.

M. S. Coleman, J.

## FACTS

Defendant is appealing the decision of the Court of Appeals to affirm his conviction by a jury of voluntary manslaughter. He was sentenced to 2 to 15 years with the recommendation that he serve only the minimum term.

The incident occurred on Memorial Day 1971. Defendant was at the home of Mr. Ellis Samon. An argument began between Mr. Samon and a young neighbor. The youngster was ordered to leave the Samon yard. He did, returned and was again ordered to leave.

The child returned a third time accompanied by

his 15-year-old brother. Mr. Samon was not present and defendant ordered the boys to leave. The older boy threw a piece of wood at defendant's car.

When again ordered to leave, the older boy said that he was going to get a gun. He went to his home and reappeared at the back door with an object which defendant claims he thought was a gun. Defendant was himself armed with a pistol. He fired and fatally wounded the boy.

At trial, it was shown that defendant owned the pistol for use in his work as a gas station attendant. He also knew that the boys had access to a weapon. Defendant claimed that his actions were taken in self-defense.

Preliminary matters and the presentation of evidence consumed four trial days. The court instructed the jury as to seven possible verdicts. The instructions cover 45 pages of transcript.

The jury deliberated four days. On three occasions the court repeated portions of its charge concerning possible verdicts. Finally, the court delivered this instruction:

"Our·laws assume that in the process of deliberation and discussion it will be possible for twelve minds to meet, to reach a consensus in which all twelve participated. Now, if this assumption proves to be incorrect in case after case, our system of jury trials as we know it will have broken down and there would have to be some other system devised to replace it. Recognizing this, the high court of our State and I should have said the highest of our State and the highest court of our Nation approves of an instruction by the trial Judge concerning efforts on agreement. The only mode provided by our Constitution and laws for deciding questions of fact in criminal cases, is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which

a juror agrees must of course, be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of each other.

"You should consider that the case should, at some time, be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men and women more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And, with this in view, it is your duty to decide the case if you can conscientiously do so without surrendering your conscientious belief.

"Now, in order to make a decision more practicable and easier to arrive at, the law places the burden of proof on one party in a criminal case and that party is the Prosecution and as I was going to say, the Prosecution is the Prosecuting Attorney. The law imposes that burden on the Prosecution. That burden is upon the Prosecution to establish every part of its case beyond a reasonable doubt and if, at any part of it you're left with a reasonable doubt, the Defendant is entitled to the benefit of that doubt and must be acquitted.

"But, in conferring together, you ought to pay proper respect to each other's opinions and listen, with a disposition to be convinced to each other's arguments.

"And, if on the one hand if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent with himself and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth and under the sanction of the same oath.

"If, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to doubt the

correctness of a judgment which is not concurred in by most of those with whom they are associated and distrust the weight of sufficiency of that evidence which fails to carry conviction to the minds of their fellows.

"Now, I ask you to try conscienciously [sic] and honestly in your own convictions, to try to arrive at a verdict. If you can arrive at a verdict in individual good conscience, do so."

The jury left the courtroom at 11:15 a.m. At 2:35 they reached a verdict.

The Court of Appeals affirmed the conviction. Its "review of the instruction complained of demonstrates that *People v Chivas*, 322 Mich 384 [34 NW2d 22] (1948) and *People v Coleman*, 21 Mich App 193 [175 NW2d 308] (1970) control".

## ISSUE

Was the *Allen*-type charge either (1) coercive per se, or (2) coercive in this particular case?

## DISCUSSION

### I

The instruction delivered by the court is known as an *Allen* charge. The earliest example is found in *Commonwealth v Tuey*, 62 Mass (8 Cush) 1 (1851). The Court approved a charge the substance of which was the same as the one quoted above. It said that this "did nothing more than to present to the minds of the dissenting jurors a strong motive to unanimity." The instruction was "entirely sound, and well adapted to bring to the attention of the jury one of the means by which they might be safely guided in the performance of their duty." Also see *State v Smith*, 49 Conn 376 (1881).

The popular name for this instruction results

from the United States Supreme Court's approval of the charge in *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896). The charge was identical to that given in *Tuey.* The Court said:

"While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury-room. The very object of the jury system is to secure unanimity by comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself. There was no error in these instructions."

To date the United States Supreme Court and this Court have sanctioned the use of this instruction. Indicative is *Kawakita v United States,* 343 US 717; 72 S Ct 950; 96 L Ed 1249 (1952). The United States Court of Appeals for the Ninth Circuit had discussed the *Allen* charge. See 190 F2d 506. The Supreme Court did not speak to this issue saying that certain allegations of error were "either insubstantial or so adequately disposed of by the Court of Appeals that we give them no notice".

## Michigan

Use of the *Allen* charge also has long been part of this state's jurisprudence. In *People v Coulon,*

151 Mich 200; 114 NW 1013 (1908), the trial court urged the minority to reconsider but further indicated "that no juror should yield his well-grounded convictions or violate his oath". The trial court also said that "if upon further consideration a juror cannot conscientiously yield, of course he ought not to do so". This Court citing *Tuey, Smith* and *Allen* said such instructions were not erroneous. See *People v Tutha,* 276 Mich 387; 267 NW 867 (1936).

Compare the decision in *People v Engle,* 118 Mich 287; 76 NW 502 (1898) where the Court noted a deviation from the *Tuey* charge and granted a new trial:

"In the present case, however, the jury were not instructed that the verdict to which they agreed should be and must be each individual juror's own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows; but, on the contrary, they were instructed just the reverse,—that they must each try to be persuaded. We think the court was in error in this instruction, and that its substance had a tendency to make the jurors feel that they must give way their honest convictions upon the merits, and agree with the majority, though they had a reasonable doubt of the guilt of the respondent."

In *People v Kasem,* 230 Mich 278; 203 NW 135 (1925), the trial court apparently told the jury that they had a duty to reach a verdict. The court indicated to the panel that it would entail great expense to declare a hung jury. This Court did not regard this as coercing agreement although "what was said might better have been omitted".[1] Each

---

[1] The court made this observation at pp 289–290:

"In considering such questions, we are apt to lose sight of the fact that jurors are men of intelligence. They fully understand that they are not mere automatons, charged with the duty of voicing the sentiments or desires of the trial court. The majority, if not all of

case must be evaluated on its own facts and cir-
cumstances. See *People v Digione,* 250 Mich 206;
229 NW 421 (1930); *People v Licavoli,* 256 Mich
229; 239 NW 292 (1931) and *People v Pizzino,* 313
Mich 97; 20 NW2d 824 (1945).

Defendant in the instant case admits that the
trial court was most scrupulous in following the
language approved in *People v Chivas,* 322 Mich
384; 34 NW2d 22 (1948). In *Chivas,* the charge was
given after the jury had deliberated into a second
day. The Court said:

"In our opinion the court did not tell the jury that it
was their duty to agree upon a verdict or tell an
individual juror that he must give up his own views and
agree with the majority. The jury was instructed to
deliberate upon the matters in issue with an open
mind, giving due credit to the opinions of others. The
jurors were also instructed that the verdict must be the
individual verdict of each juror and be the result of his
own convictions. We are unable to find any coercion in
the instructions given."

Our decisions lead to the conclusion an *Allen*
charge is not per se coercive. Any claim of coer-
cion must be determined on a case-by-case basis.

## II

The *Allen* charge reached middle age before it
received critical attention. Although most state
and Federal courts continue to use an *Allen*-type

them, have a proper conception of their own duty, and of the duty of
the court, and will not be driven to return a hasty or unjust verdict
because they might think it in accord with the wishes of the court.
Instructions urging agreement if the jurors could conscientiously do
so, and stating that absolute certainty that their verdict was right
could not be expected, were approved of in *Commonwealth v. Tuey,* 8
Cush. (Mass.) 1; *State v. Smith,* 49 Conn. 376, and *Allen v. United
States,* 164 U. S. 492 (17 Sup. Ct. 154)."

charge,[2] some jurisdictions have adopted new instructions and of those jurisdictions, some had deficiencies not present in the Michigan instruction.

However, a look at case and comment on the subject may bring into focus the principal concerns involved.

## A

The giving of proper supplemental instructions serves a positive end.[3] One author noted "the basic theme that considerations of judicial economy require that jurors reexamine their convictions in attempting to reach a verdict",[4] and then wrote:

"[T]he interests in avoiding hung juries and in impressing jurors with the necessity to deliberate in good faith with their fellows in attempting to reach a unanimous verdict deserves substantial weight, not merely in terms of judicial administration but in terms of achieving the end product of a fair trial."[5]

Although the elimination of supplemental instructions might retard rather than promote the

[2] See 100 ALR2d 177; 53 Am Jur, Trial, §§ 950–964, and discussion in *Poindexter v Commonwealth*, 213 Va 212, 191 SE2d 200 (1972), and *Kelly v State*, 16 Md App 533; 298 A2d 470 (1973).

[3] "As with all supplemental charges urging agreement, the goal of the Allen charge is to prod the jury into fruitful deliberation leading to a verdict." *Note: Supplemental Jury Charges Urging A Verdict— The Answer is Yet to be Found*, 56 Minn L Rev 1199, 1203–1204 (1972).

[4] Note, *Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge*, 53 Va L Rev 123, 125 (1967).

[5] *Id.* pp 126–127. Also *see The Allen Charge: Recurring Problems and Recent Developments*, 47 NYU L Rev 296 (1972) noting that "the Allen charge has enjoyed a general acceptance among trial judges as a useful and effective tool for breaking deadlocks which might otherwise result in mistrials". Considerations of cost and case backlogs must justify "pressuring a jury to reach agreement if a verdict can be achieved without improper compromise." (p 297.)

interests of justice,[6] courts must guard against
coercion.

"Such an instruction is proper only if it serves to
start further deliberation. If the charge has the effect of
forcing a juror to surrender an honest conviction, it is
coercive and constitutes reversible error. In order to
determine whether the *Allen* instruction has such an
influence on the jury, the charge must be examined in
the factual context in which it is given."[7]

The optimum instruction will generate discussion
directed towards the resolution of the case but will
avoid forcing a decision.[8]

If the instruction given "can cause a juror to
abandon his conscientious dissent and defer to the
majority solely for the sake of reaching agree-
ment",[9] then that charge should not be used. Such
results obviously have no place in a fair criminal
justice system.

The study presently having a great impact is the
ABA Project on Minimum Standards for Criminal

---

[6] "[T]he real issue is not whether any form of supplemental instruc-
tion urging agreement is proper, but rather what form the instruction
should take." *Note: Supplemental Jury Charges Urging A .Verdict—
The Answer is Yet to be Found.* 56 Minn L Rev 1199, 1210 (1972).

[7] Comment, *Defusing the Dynamite Charge: A Critique of Allen and
its Progeny,* 36 Tenn L Rev 749, 754–755 (1969). Also *see Comment:
Instructing Deadlocked Juries: The Present Status of the Allen
Charge,* 3 Tex Tech L Rev 313 (1972) saying the "ultimate test * * *
is whether in light of the facts of the case and the language used, the
charge operated to coerce a verdict or merely served to generate
further deliberation which resulted in agreement".

[8] A perceptive and most interesting analysis is made in an article
*On Instructing Deadlocked Juries,* 78 Yale LJ 100 (1968). It says at p
129: "We may therefore define a 'properly' hung jury as one where
the persuasion mechanisms, working to full efficiency, will not be
sufficient to bring about agreement. In an 'improperly' hung jury the
mechanisms will be sufficient to bring about agreement, but for some
reason do not operate at full efficiency. The law's aim will be to lead
improperly hung juries to agreement while leaving properly hung
ones unaffected."

[9] Comment, *Deadlocked Juries and Dynamite: A Critical Look at
the "Allen Charge",* 31 U Chi L Rev 386, 393 (1964).

Justice.[10] The standards relating to trial by jury were approved by the House of Delegates in 1968. Section 5.4 reads as follows:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

[10] *See generally Allen Charge: Is the ABA Standard for Instructing Deadlocked Juries More Desirable for Augmenting Judicial Efficiency and Avoiding Coercion?* 22 Syracuse L Rev 1167 (1971); *Note: Supplemental Jury Charges Urging A Verdict—The Answer is Yet to be Found,* 56 Minn L Rev 1199 (1972); *The Allen Charge—Recurring Problems and Recent Developments,* 47 NYU L Rev 296 (1972); *Jury Instructions—ABA Jury Instructions Adopted As Preferable to Allen Charge,* 25 Vand L Rev 246 (1972) and *The Faltering Allen Charge and Its Proposed Replacement,* 16 St Louis U L J 619 (1972).

As we shall see, some courts have given great weight to these recommendations.

## B

For nearly three quarters of a century the *Allen* charge had clear sailing in the Federal courts with but an occasional contrary breeze.[11] In 1969 the Seventh Circuit addressed the problem in *United States v Brown,* 411 F2d 930. The Court rejected arguments that the instruction violated the Sixth Amendment or was necessarily unfair. Noting criticisms, the Court "concluded that it would serve the interests of justice to require" under its supervisory power that district courts prospectively follow the ABA recommendation.[12] They affirmed defendant's conviction because he could not show the charge given was so prejudicial as to warrant reversal.[13]

In *United States v Fioravanti,* 412 F2d 407 (1969), the Third Circuit analyzed a charge telling minority jurors to distrust their own judgment, a charge not present in the instant instruction. However, the Court did not reverse the conviction. The charge "was not so prejudicial as to deprive appellant of a fair trial". The Court did forbid trial judges to "direct a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his."

The ABA standards also were adopted in a 5–4

[11] *See, e.g.,* Judge Brown's dissent in *Huffman v United States,* 297 F2d 754 (CA 5, 1962).

[12] The Court subsequently in *United States v Silvern,* 484 F2d 879 (1973) adopted an instruction which the ABA said was consistent with § 5.4(b). If any other supplemental instruction is used in the 7th circuit, "a resulting conviction will be reversed and remanded for a new trial."

[13] *Brown* was followed in *State v Garza,* 185 Neb 445; 176 NW2d 664 (1970).

decision by the District of Columbia Court of Appeals sitting *en banc* in *United States v Thomas,* 146 US App DC 101; 449 F2d 1177 (1971). The trial court had given an *Allen* charge but also personally encouraged the jurors to reach a verdict. The Court of Appeals deemed this coercive. The Court did not hold the *Allen* charge per se coercive but exercised its supervisory powers in adopting the ABA proposals for use in trials conducted after the date of their opinion.[14]

The majority of circuits continue to permit use of the *Allen* charge[15] particularly if it emphasizes that each juror has to make an individual judgment.[16] In *United States v Sawyers,* 423 F2d 1335 (1970), the Fourth Circuit noted that the instruction "twice included language emphasizing that no juror should surrender his or her conscientious convictions because of the opinion of other jurors or for the mere purpose of returning a verdict."[17] The Court further said:

"A calmly dispassionate balanced effort on the part of a trial judge to induce a verdict does not seem to us to invade the province of the jury. What, after all, is the purpose of the judge's initial charge to the jury? It is not to induce a verdict based upon evidence and the law as he has given it to them? Why is a trial judge in the federal system given the power to comment on the

[14] *See Future Renditions of "Allen"—Type Charges Must Conform to the Standard Approved by the American Bar Association,* 9 Hous L Rev 570 (1972) and *Bombshell Instruction for Deadlocked Juries: ABA Standard Replaces Allen Charge in District of Columbia,* 13 Wm & Mary L Rev 672 (1972).

[15] See the later case service supplement to 100 ALR2d 177.

[16] *See United States v Barash,* 412 F2d 26 (CA 2, 1969); *United States v Wynn,* 415 F2d 135 (CA 10, 1969) and *United States v Pope,* 415 F2d 685 (CA 8, 1969).

[17] The Court said the charge "would be better balanced, and fairer if mention had been made of the duty of the majority to listen and consider any minority viewpoint, for we concede that being in the majority does not necessarily make one right."

evidence, and to place the burden of proof, and to advise the jury that it is their duty to accept the law as he gives it to them, unless it is to help the jury arrive at a true verdict? If the jurors misunderstand the instructions, no one, we think, would seriously suggest that the judge may not subsequently clarify or repeat them. If, at the same time, he urges further deliberation in an effort to agree upon a verdict, and in doing so his comments are balanced and not slanted toward conviction, we are unable to perceive harm to the defendant.[18]

Also see *United States v Bailey,* 480 F2d 518 (1973) where the Fifth Circuit sitting *en banc* reaffirmed their "decisions approving the *Allen* charge within the limitations therein delineated."

### C

As noted above, the charge which *Commonwealth v Tuey* validated originally was approved in *United States v Allen.* In 1968 the Massachusetts Court reaffirmed the holding of *Tuey.* In *Commonwealth v Rollins,* 354 Mass 630; 241 NE2d 809 (1968), the Court said the instruction was not coercive and states "merely what an intelligent juror should set as a standard for his own conduct":

"We think that the language of the *Tuey* case has stood the test of time as a reasonable method of inviting a jury's attention, even after the original charge, to considerations which, as reasonable men, they should take into account, without surrendering positions which conscience and careful judgment have led them to

---

[18] The Court made this observation: "Since the prosecution may obtain a verdict of guilty only if the jury is convinced of the facts alleged beyond a reasonable doubt, whereas the defendant has the double opportunity of findings consistent with innocence or an inability to determine what the truth is, we think some reasonable degree of encouragement to arrive at a verdict is not inherently unfair to defendants."

adopt. The parties are entitled to have a jury appropriately guided at all stages by the trial judge, whose proper participation is essential to fair trial by jury. The *Tuey* charge seems to us a method by which a trial judge may assist a jury when requesting them to consider a case further."

Also see *Commonwealth v Richardson,* — Mass —; 282 NE2d 95 (1972).

However, the Massachusetts Court recently provided some prospective guidelines. In *Commonwealth v Rodriquez,* — Mass —; 300 NE2d 192 (1973), defendant's claim that the supplemental instructions were prejudicial was rejected on the authority of *Rollins.* "For the future" the Court thought "certain emendations of the *Tuey* charge are desirable in the interests of the better administration of criminal justice" and prospectively adopted a revised version.

In an appendix the Court printed the *Tuey* charge with the changes it thought appropriate.[19]

[19] "The Tuey Charge, with Changes. (Deletions are shown by interlining; additions by italicizing.)

"The ~~only~~ *principal* mode, provided by our constitution and laws for deciding questions of fact in criminal cases, is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that *it is desirable that* the case ~~must at some time~~ be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve ~~men~~ *persons* more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other, in all cases. In the present case, the burden of proof is upon the commonwealth to establish every part of it, beyond a reasonable doubt; and if, in any part of it you are left in doubt, the defendant is entitled to the benefit of the doubt, and must

The Court said the charge still "has a sting and our approval of it is not to be taken as an indication that it may be used prematurely or without evident cause." The Court also approved the illustrative charge accompanying § 5.4 of the ABA study.[20]

Among others, Oregon, Alaska and Minnesota also proceeded to adopt the ABA standards. The Pennsylvania Supreme Court prohibited further use of the *Allen* charge in *Commonwealth v Spencer,* 442 Pa 328; 275 A2d 299 (1971).[21] The ABA standards were recommended as guidelines. The ruling was prospective only. Defendant's convic-

---

be acquitted. But, in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. ~~And, on the one hand, if much the larger member of your panel are for a conviction, a dissenting juror~~ *Thus, where there is disagreement, jurors for acquittal* should consider whether a doubt in ~~his~~ *their* own ~~mind~~ *minds* is a reasonable one, which makes no impression upon the minds of ~~so many men,~~ *others,* equally honest, equally intelligent with ~~himself,~~ *themselves,* and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And on the other hand, ~~if a majority are for acquittal, the minority~~ *jurors for conviction* ought seriously to ask themselves, whether they may not reasonably, ~~and ought not to~~ doubt the correctness of a judgment, which is not concurred in by ~~most of those~~ *others* with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

[20] "The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrend your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

"You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

[21] *See Allen Charge No Longer Permissible in Pennsylvania,* 76 Dick L Rev 614 (1972).

tion was affirmed as analysis disclosed that the jury was not coerced. For a favorable analysis of a supplemental charge, see *Commonwealth v Lambert,* 450 Pa 130; 299 A2d 240 (1973).

Exercising its supervisory powers, the Illinois Supreme Court adopted the ABA standards and recommended instructions in *People v Prim,* 53 Ill 2d 62; 289 NE2d 601 (1972). The Court did not totally prohibit use of supplemental instructions. The Court did not feel that "a jury should be left to grope in such circumstances without some guidance from the court".

The ABA standards were adopted in Maine in *State v White,* 285 A2d 832 (1972). However, the *Allen*-type charge was not considered per se coercive, nor did it have that effect in this case. Defendant's conviction was affirmed.

Vermont also has recently disapproved "the use of such a charge that departs from the substance of the ABA standards". *State v Perry,* 131 Vt 337; 306 A2d 110 (1973).

## *CONCLUSION*

Although the majority of state and Federal jurisdictions still approve an *Allen*-type supplemental charge, an increasing number of courts have found an inherent danger in the possibility that the charge may be coercively worded and applied in some cases. In order to insure fair trials generally and fewer retrials, the better practice has been deemed by many to be that found in ABA standard jury instruction 5.4. We agree in that conclusion and in the proclivity of the various courts to adopt the standard for future use.

Concluding from the standards generally approved by both Federal and state courts and by

Michigan precedent, we cannot find the supplemental charge given herein coercive per se. Nor can we objectively say that it was applied coercively in this case or resulted in a coerced verdict. In fact, the great care insured by the trial judge and the extensive thought evidenced by the jury in asking for re-instructions as to particular verdicts produced a verdict quite appropriate to the admitted facts. The totality of this long trial based upon the state of the law at that time precludes any finding of error by the judge or deprivation of constitutional rights of the defendant.

However, we are persuaded that any possible future danger of coercive effect by the giving of an *Allen*-type charge is one which can and should be avoided. An analysis of recent cases and commentaries confirms our belief that the better practice is to be found in the recommended ABA jury standard 5.4.

Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. Any substantial departure therefrom shall be grounds for reversible error.

Affirm.

T. M. KAVANAGH, C. J., and SWAINSON, WILLIAMS, and J. W. FITZGERALD, JJ., concurred with M. S. COLEMAN, J.

T. G. KAVANAGH, J. *(dissenting)*. I agree that the ABA standard jury instruction 5.4 is an acceptable instruction if given before the jury retires to deliberate.

Once a deadlock develops, however, the only purpose to be served by any such instruction given at that time is to coerce a verdict. This is what I believe is improper.

I would eliminate § (b) from the ABA standard instruction.

In the instant case, because I am convinced the jury was coerced into a verdict, I would set aside the conviction.

LEVIN, J., concurred with T. G. KAVANAGH, J.