# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES SCOTT LAWSON,

Defendant-Appellant.

UNPUBLISHED
August 23, 2016

No. 327714
Calhoun Circuit Court
LC No. 2014-002486-FH

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant, James Scott Lawson, was convicted by a jury of second-degree criminal sexual conduct (victim under 13), MCL 750.520c(1)(a) (CSC II); and assault with intent to commit CSC II, MCL 750.520g(2) (victim under 13). Defendant was sentenced to 365 days in jail with credit for 419 days served and 60 months' probation for his CSC II conviction as well as a concurrent term of 330 days in jail with credit for 419 days served for his assault with intent to commit CSC II. Defendant now appeals as of right. We affirm.

Defendant first argues that the trial court erred by giving supplemental instructions to the jury and denying defendant's request for a mistrial when the jury indicated that it was unable to reach a verdict. Defendant preserved this issue by requesting a mistrial in the trial court. A trial court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion. *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). For there to be error requiring reversal, "[t]he trial court's ruling must be 'so grossly in error as to deprive a defendant of a fair trial or to amount to a miscarriage of justice.' " *People v Gonzales*, 193 Mich App 263, 265; 483 NW2d 458 (1992) (citation omitted). "A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*. at 266.

When a jury indicates that it is unable to reach a verdict, the trial court may permissibly give supplemental jury instructions and direct the jury to continue deliberations. See, e.g., *People v Hardin*, 421 Mich 296, 303-306, 316, 320; 365 NW2d 101 (1984); *People v Sullivan*, 392 Mich 324, 327-329, 333-336, 341-342; 220 NW2d 441 (1974). A proper supplemental instruction facilitates continued deliberation while avoiding coercion. *Sullivan*, 392 Mich at 334. However, "[i]f the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error." *Id*. In other words, "[t]he optimum instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision."

*Id*.  To this end, the *Sullivan* Court adopted the ABA standard jury instruction 5.4 for use with deadlocked juries and also held that "[a]ny substantial departure [from this instruction] shall be grounds for reversible error."  *Sullivan*, 392 Mich at 327-329, 335, 341-342.  The Michigan Model Criminal Jury Instructions incorporated the ABA standard instruction 5.4 in the deadlocked jury instruction found in M Crim JI 3.12.  See *People v Pollick*, 448 Mich 376, 382 n 12; 531 NW2d 159 (1995).

The test for whether a given instruction constitutes a substantial departure from this instruction, such that it is reversible error, is whether the instruction has "an undue tendency of coercion—*e.g.*, could the instruction given cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement?"  *Hardin*, 421 Mich at 314.  The instruction "must be examined in the factual context in which it is given" to determine whether there was a coercive effect on the jury.  *Id*. at 315.  Additional language will rarely be considered a substantial departure if it "contains no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion."  *Id*.  The evaluation of an instruction's potential coercive effect should also consider "whether the court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals."  *Id*. at 316.  Additionally, an instruction is coercive if it directs the jury to reach a unanimous verdict "as part of its civic duty" and "contains the message that the failure to reach a verdict constitutes a failure of purpose."  *Id*., citing *People v Goldsmith*, 411 Mich 555, 561; 309 NW2d 182 (1981).

The *Hardin* Court found that a trial court's additional comments beyond the language of ABA standard jury instruction 5.4 were not a substantial departure because the "comments were directed toward generating discussion and fostering resolution of the case and avoided forcing a decision."  *Hardin*, 421 Mich at 320.  In *Hardin*, after the jury indicated that it could not reach a verdict, the trial court gave supplemental instructions to the jury on three separate occasions, with the jury returning to its deliberations during the time between each instruction.  *Id*. at 303-307.  After the third instruction, the jury was sent home for the evening.  *Id*. at 306.  The jury returned the following morning and reached a verdict at 11:50 a.m.  *Id*.  The trial court's first instruction "substantially parallel[ed] ABA standard jury instruction 5.4" but also included additional comments such as "And I am sure with consideration and thought, that you will be able to arrive at a verdict" and "All of the facts have been presented to you."  *Id*. at 317.  The trial court's second and third instructions included statements such as "I feel you must give further consideration to this before I can accept a verdict," "please see if you can't reach a verdict," and "Perhaps after a night's sleep and breakfast in the morning, you will be able to come back and reach a verdict."  *Id*. at 318-319.

The Michigan Supreme Court in *Hardin* concluded that although the trial court's statements departed from the language of ABA standard jury instruction 5.4, the departure was not "substantial" because the statements were not coercive, did not "require[] or threaten[] to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals," and contained "no undue pressure, threats, embarrassing assertions, or other wording that would tend to force a decision or cause a juror to abandon his conscientious dissent and defer to the majority."  *Id*. at 317-318, 320-321.  The Court also found that even if the jury made unwarranted inferences from the trial court's expression of confidence that the jury could reach a verdict, those inferences were mitigated by the instructions that followed, which were in

compliance with the ABA standard. *Id*. at 318. The Court stated that "[t]he overall effect of the instruction in this case was not to coerce the jury, but indeed seemed to stress the need to engage in full-fledged deliberation" and held that the trial court's instructions did not constitute reversible error. *Id*. at 314, 320-321.

Here, the trial court did not abuse its discretion by denying defendant's request for a mistrial and providing the jury with the deadlocked jury instruction. The trial court received one note from the jury indicating that it was unable to determine a verdict, heard arguments from counsel, decided to send the jury home for the weekend with deliberations to resume on Monday morning, and gave the deadlocked jury instruction to the jury on Monday morning before the jury resumed its deliberations. The trial court's supplemental instruction was virtually identical to M Crim JI 3.12 in all respects, with the exception of the following additional language:

> I cannot, of course, give you any assistance in finding the facts or finding who to believe or what weight to give to testimony. Those kinds of things are entirely your duty. But I can clarify the instructions if those are confusing you and I'm happy to do that.

However, this additional language is merely a reiteration of the instructions that the trial court previously gave to the jury at the end of trial regarding the jury's role. There is no inference of coercion to be drawn from repeating a prior jury instruction in the context of providing a deadlocked jury with supplemental instructions. See *Hardin*, 421 Mich at 317 ("The supplemental instruction concerning penalty was verbatim of that given to the jury prior to deliberations. We do not infer from that instruction that the jurors 'should just find the defendant guilty and the court would worry about the penalty.' ").

Furthermore, although the trial court in the instant case prefaced its deadlocked jury instruction with a recognition of the difficulty of the case, the eight hours that the jury had already spent deliberating, and the statement that the court was "not prepared at this point to find . . . [that] every reasonable effort has been made to reach agreement," none of these additional comments were coercive. The trial court did not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals, and its comments contained "no undue pressure, threats, embarrassing assertions, or other wording that would tend to force a decision or cause a juror to abandon his conscientious dissent and defer to the majority." *Hardin*, 421 Mich at 317-318, 320-321. Neither did the trial court imply that the jury would fail in its purpose if it was unable to reach a unanimous verdict. *Goldsmith*, 411 Mich at 561. Even if a juror could have understood the trial court's initial comments as slightly coercive, such a perception was cured by the trial court's subsequent instruction that "none of you should give up your honest beliefs about the weight or affect [sic] of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement," which comes directly from M Crim JI 3.12. See *Hardin*, 421 Mich at 318; *Sullivan*, 392 Mich at 335; M Crim JI 3.12. Considering the factual circumstances of the instant case, the trial court's additional language did not constitute a substantial departure and was not coercive. *Hardin*, 421 Mich at 314-315. The trial court's instructions and comments were proper because they served to "generate discussion directed towards the resolution of the case" without "forcing a decision." See *Sullivan*, 392 Mich at 334. Thus, the trial court did not abuse its discretion because its decision to give the

deadlocked jury instruction and deny defendant's request for a mistrial did not deprive defendant of a fair trial. See *Dennis*, 464 Mich at 572; *Gonzales*, 193 Mich App at 265-266.

Next, defendant argues that he was improperly assessed 10 points for OV 4 because there was no evidence presented at trial or at sentencing that demonstrated that the victim suffered serious psychological injury that may require professional treatment. Defendant preserved this issue by objecting at sentencing to the scoring of OV 4 on the same grounds. See *People v Ackah-Essien*, 311 Mich App 13, 35-36; 874 NW2d 172 (2015). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citation omitted).

It is proper to assess 10 points when the victim's "serious psychological injury may require professional treatment." MCL 777.34(2); *People v Lockett*, 295 Mich App 165, 182-183; 814 NW2d 295 (2012). It is not necessary for the court to find that the victim actually received professional treatment. *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). There must be some evidence on the record of psychological injury to justify assessing 10 points. *Lockett*, 295 Mich App at 183. This Court has found a 10-point score to be sufficiently justified by a victim's testimony that she was fearful during a sexual assault. *People v Apgar*, 264 Mich App 321, 324, 329; 690 NW2d 312 (2004). This Court has also found that 10 points were properly assessed for OV 4 where "at sentencing, the prosecutor submitted a receipt for counseling services and he informed the court that, two days before sentencing, the victim 'began another series of counselings' with Catholic Human Services." *Davenport*, 286 Mich App at 200.

Here, the evidence on the record of the victim's psychological injury supported the assessment of 10 points for OV 4. The victim's mother testified at trial that the victim discussed the sexual assault with her therapist, and the prosecutor reported that she had been informed that the victim continued with her counseling as a result of the sexual assault. While the statute does not require that the victim sought treatment, the fact that the victim continued with professional psychological treatment as a result of the assault supports assessing 10 points for OV 4. See *Davenport*, 286 Mich App at 200. Furthermore, the victim testified at trial that she did not get up to tell anyone about the assault immediately after it occurred because she felt "nervous" and that she felt "nervous and scared" the next day when she wrote the letter to the victim's mother describing the incident. The victim's testimony also supports a finding of psychological injury that supports assessing 10 points for OV 4. See *Apgar*, 264 Mich App at 329. Therefore, the trial court properly assessed 10 points for OV 4.

Affirmed.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro