# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARYL TREMAINE TIBBS,

Defendant-Appellant.

UNPUBLISHED
December 20, 2018

No. 338867
Genesee Circuit Court
LC No. 16-038959-FC

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b. We affirm.

On September 18, 2015, Travis Galloway was shot eight times and killed during a robbery in his home. Defendant had been temporarily staying at Galloway's house because he was homeless. Galloway's mother, Rose Glover, and Galloway's friend, Deandre Smith, also lived in the house. According to the evidence, the night before the shooting defendant, Galloway, and Smith had celebrated defendant's birthday at the house, and all three men had slept in the living room. The next morning, Smith left to go to the store and, 15 minutes later, Glover left to meet a nearby neighbor. Defendant was awake and Galloway was still sleeping when both Smith and Glover left. Glover heard a brief contentious exchange between defendant and Galloway. Moments later, witnesses heard several gunshots.

A short time later, defendant emerged from the side of the house indicating that he had been shot in the leg by an intruder, whom he identified as a person who had previously sold hats to him and Galloway. Other than defendant, no one else was seen leaving Galloway's house. At defendant's urging, Smith removed two of Galloway's guns from the home. The police transported defendant to the hospital to address his "superficial" wound and, when collecting defendant's possessions, recovered a wallet that matched the description of Galloway's wallet. Galloway's DNA was found on both the wallet and a chain attached to the wallet. The wallet contained $1,250. In a videotaped interview, defendant repeatedly denied shooting Galloway and claimed that the wallet belonged to him, but he could not account for the source of the $1,250 in the wallet. Defendant's description of the event was also inconsistent with other

-1-

physical evidence found by the police. The defense theory at trial was that the "hat seller" was the shooter.

On Friday, April 21, 2017, after several days of witness testimony, the trial court completed its final jury instructions. Jury deliberations then began at 3:33 p.m. and lasted for the reminder of the afternoon. On the following Monday, the jury resumed deliberations. At 2:02 p.m., after receiving a note from the jury, the trial court instructed the jury in accordance with the ABA standard deadlocked jury instruction, M Crim JI 3.12. The jury resumed deliberations at 2:05 p.m. but was unable to reach a verdict before the end of the day. Deliberations resumed the next day. At approximately 3:15 p.m., the trial court further instructed the jury in response to questions the jury had submitted. After the jury was again excused to resume deliberations, it was discovered that the trial court's supplemental instruction had not been recorded. Therefore, at 3:47 p.m., in an effort to "recreate what happened," the trial court placed the following summary of its supplemental instruction on the record:

> What I said was about a half an hour ago a juror wrote, "I'm tired of being treated like an outsider just because I do not agree with the other, and being called out of my name." And then 10 or 15 minutes after that we received a note from the jury saying, "If one person refuses to come to a decision on anything and will not elaborate why, how do we proceed?" So the Court called the jury out here and I said to them that it was apparent there was a personality conflict going on. That the jury should make their decision based upon the facts and the elements and not on personal disagreements. I said it's natural that people can disagree, but—and there's a natural inclination to take it personally, but the Court wanted them to avoid the personal nature of any disagreement and focus on the facts and be more objective.
>
> And then the Court suggested to them that—reminded them that the instructions say that they can make a verdict on one charge or all charges. And if they had the unanimous agreement on any one charge they're free to come back out and announce that and then continue deliberating on the rest of them. And I told them to use the facts and go back and discuss it some more. Now before I did all that Mr. Beauvais objected . . . .

The jury continued deliberations until the end of the day and resumed at 9:00 a.m. the following morning. At the end of the day, the jury sent a note asking the court to define "cold-blooded murder" and to explain the difference between first-degree and second-degree murder. The parties agreed that the trial court would read the applicable instructions, which the court did. Later that day, at 12:10 p.m., the jury returned its verdict, finding defendant guilty of first-degree premeditated murder, armed robbery, and felony-firearm. The jurors were individually polled and each agreed with the verdict.

On appeal, defendant argues that the trial court abused its discretion when, after the jury reported that it was unable to reach a verdict on the third day of deliberations, the court failed to declare a mistrial, particularly because this was the second time that the jury reported that it was unable to reach a verdict. We disagree.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Id*. "A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id*. (quotation marks and citation omitted).

When a jury indicates that it is unable to reach a verdict, the trial court may give supplemental jury instructions and direct the jury to continue deliberations. *People v Hardin*, 421 Mich 296, 316; 365 NW2d 101 (1984). A proper supplemental instruction facilitates continued deliberation while avoiding coercion. *People v Sullivan*, 392 Mich 324, 334; 220 NW2d 441 (1974). However, "[i]f the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error." *Id*. (citation omitted). "The optimum instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision." *Id*. To this end, the *Sullivan* Court adopted the ABA standard jury instruction 5.4 for use with deadlocked juries and also held that "[a]ny substantial departure [from this instruction] shall be grounds for reversible error." *Sullivan*, 392 Mich at 342. The Michigan Model Criminal Jury Instructions incorporates the ABA standard instruction 5.4 in the deadlocked jury instruction found in M Crim JI 3.12. *People v Pollick*, 448 Mich 376, 382 n 12; 531 NW2d 159 (1995).

The test for whether a given instruction constitutes a substantial departure from this instruction, such that it requires reversal, is whether the instruction has "an undue tendency of coercion—e.g., could the instruction given cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement?" *Hardin*, 421 Mich at 314. The instruction "must be examined in the factual context in which it is given" to determine whether there was a coercive effect on the jury. *Id*. at 315. Additional language will "rarely" be considered a substantial departure if it "contains 'no pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion[.]' " *Id*. (citation omitted). The evaluation of an instruction's potential coercive effect should also consider "whether the court required, or threatened to require, the jury to deliberate for an unreasonable length of time or for unreasonable intervals." *Id*. at 316. In addition, an instruction is coercive if it directs the jury to reach a unanimous verdict "as part of its civic duty" and "contains the message that the failure to reach a verdict constitutes a failure of purpose[.]" *Id*.

In this case, on the second day of deliberations the trial court gave the jury the standard deadlocked jury instruction after the jury reported that it was unable to reach a verdict. Defendant did not object to the trial court's handling of the matter or to the instruction as given. On appeal, defendant takes issue with the trial court's supplemental instruction given on the third day of deliberations. Although the jury had previously reported that it was unable to reach a verdict, in this instance the jury sought direction on how to proceed "[i]f one person refuses to come to a decision on anything and will not elaborate why . . . [.]" As summarized by the trial court, it viewed the jury's inquiry as reflecting "a personality conflict going on." As a result, the court tailored its instruction to this particular situation by instructing the jurors to "make their decision based upon the facts and the elements and not on personal disagreements" and to "avoid the personal nature of any disagreement and focus on the facts and be more objective." The court stated nothing concerning the law to be applied to the case or in any way bound a juror to

reach a particular result. The court also did not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals. The court's overall message was that the jury must focus on the facts and the elements in deciding the case, and not on any personality issues.

Although the instruction departed from the ABA instruction, it was responsive to the situation presented, which involved a juror who was not fully participating in the deliberative process, rather than a situation where all jurors were fully participating, but unable to come to an agreement. Significantly, there is no indication that the court's instruction contained any pressure, threats, embarrassing assertions, or other wording that would constitute coercion. While we do not endorse departures from the standard instruction, in the context of this case, where the court specifically was addressing "a personality conflict going on" and had given the deadlocked instruction on the previous day, the impact of the jury instruction given "was not to coerce the jury, but indeed seemed to stress the need to engage in full-fledged deliberation." *Hardin*, 421 Mich at 321. And based on the jury's subsequent question about the elements of first-degree murder and second-degree murder, it appears that the jury did, in fact, engage in deliberations, focusing on the elements and the facts, as instructed. The supplemental instruction, as summarized by the court, was not unduly coercive. Therefore, the trial court did not abuse its discretion by denying defendant's motion for a mistrial. See *Schaw*, 288 Mich App at 236.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron

-4-