*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 29, 2021

Plaintiff-Appellee,

v

No. 349161
Genesee Circuit Court

DARRELL PATRICK HUNTER,

LC No. 18-043311-FC

Defendant-Appellant.

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f(1), carrying a concealed weapon (CCW), MCL 750.227, felon in possession of ammunition, MCL 750.224f(3), and possession of a firearm during the commission of a felony, second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 40 to 80 years for the murder conviction, and 76 to 180 months each for the felon-in-possession and CCW convictions, to be served consecutive to a five-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant's convictions arise out of the fatal shooting of Vince Robinson outside a Flint bar during the early morning hours of May 5, 2018. At trial, the prosecutor argued that defendant escalated a bar fight when, after being removed from the bar, he went to his vehicle, obtained a gun, and then fired three shots, two of which struck Robinson, killing him. There was evidence that both defendant and Robinson were at the bar with their own friends and family. At one point, a fight involving approximately 10 people began in the bar's patio area, during which Robinson and defendant's friend, Sonny Castillo, fought each other. When defendant picked up a chair and moved toward the fight, one of Robinson's associates tackled him and slammed him to the ground. Security personnel intervened and evacuated the area. Defendant and Castillo were escorted out of the bar first, and defendant went to his vehicle. Meanwhile, when Robinson and his associates exited the bar, Robinson and Castillo continued their fight. Castillo ended up on the ground, and

then Robinson, Kimberly Houck, and possibly others punched, kicked, and stomped Castillo. The fighting stopped when gunshots erupted. Defendant initially fired two shots, and Houck and Robinson were each shot. Robinson ran after being shot. Seconds later, defendant fired a third shot, which also struck Robinson. After the shooting, defendant left the scene. The police recovered the firearm that defendant used in the shooting from some bushes outside his house.

At trial, the defense argued that defendant was not guilty because he shot his firearm in the lawful defense of others, particularly his wife and Castillo, who both were on the ground, being punched and kicked, and in danger of being killed. The jury convicted defendant of second-degree murder, felon-in-possession of a firearm, felon-in-possession of ammunition, CCW, and felony-firearm. The trial court sentenced defendant as noted *supra*. This appeal followed.

## II. DEADLOCKED-JURY INSTRUCTION

Defendant first argues that the trial court erred by giving an erroneous deadlocked-jury instruction, which he contends was unduly coercive. We disagree. Defendant did not preserve this issue by objecting to the instruction as given at trial. Therefore, our review of this issue is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

When a jury indicates that it is unable to reach a verdict, the trial court may give supplemental jury instructions and direct the jury to continue deliberations. See *People v Hardin*, 421 Mich 296, 316; 365 NW2d 101 (1984). A proper supplemental instruction facilitates continued deliberation while avoiding coercion. *People v Sullivan*, 392 Mich 324, 334; 220 NW2d 441 (1974). However, "[i]f the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error." *Id*. "The optimum instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision." *Id*. To this end, the Court in *Sullivan* adopted the ABA standard jury instruction 5.4 for use with deadlocked juries and also held that "[a]ny substantial departure [from this instruction] shall be grounds for reversible error." *Sullivan*, 392 Mich at 342. The Michigan Model Criminal Jury Instructions incorporates the ABA standard instruction 5.4 in the deadlocked-jury instruction found in M Crim JI 3.12. See *People v Pollick*, 448 Mich 376, 382 n 12; 531 NW2d 159 (1995).

In this case, on the third day of deliberations, when the jury reported that it was unable to reach a unanimous verdict, the trial court gave a deadlocked-jury instruction consistent with M Crim JI 3.12. As noted, defendant did not object to the instruction. On appeal, defendant takes issue only with the following portion of the trial court's instruction, which, according to defendant, should be deemed coercive because it is not part of the standard jury instruction:

> If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you further in your deliberations.

Contrary to what defendant asserts, this instruction is identical to ¶ 5 of M Crim JI 3.12, which states:

If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations. [M Crim JI 3.12(5).]

Our Supreme Court has recently stated that M Crim JI 3.12 strikes the correct balance, when giving a supplemental deadlocked-jury instruction, of promoting the goal of encouraging the jury to deliberate further without coercing a verdict. *People v Walker*, 504 Mich 267, 277-278; 934 NW2d 727 (2019). Thus, defendant has not demonstrated that the trial court's deadlocked-jury instruction, which is identical to M Crim JI 3.12, qualifies as an error, let alone a plain error affecting his substantial rights. Accordingly, defendant is not entitled to a new trial on this basis.

## III. INCONSISTENT VERDICT

Defendant also argues that he should receive a new trial because the jury verdict is inherently inconsistent. Again, we disagree. Defendant did not preserve this issue by arguing that the jury rendered an inconsistent verdict in the trial court. We therefore review this issue for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

After the trial court gave the standard deadlocked-jury instruction on the third day of deliberations, the jury deliberated for another day and a half before it reached a verdict. The jury convicted defendant of second-degree murder for the death of Robinson, felony-firearm predicated on defendant's murder conviction, CCW, felon in possession of a firearm, and felon in possession of ammunition. The jury acquitted defendant of assault with intent to commit murder with respect to Houck, felony-firearm predicated on defendant's possession of a firearm during the commission of assault with intent to commit murder, and two additional counts of felony-firearm predicated on: (1) defendant's possession of a firearm while being a felon in possession of a firearm, and (2) defendant's possession of a firearm while being a felon in possession of ammunition.

Juries may return inconsistent verdicts on multiple counts, and, accordingly, such a verdict does not automatically require reversal of a defendant's convictions. *People v Lewis*, 415 Mich 443, 448; 453; 330 NW2d 16 (1982); *People v Vaughn*, 409 Mich 463, 465-466; 295 NW2d 354 (1980). Our Supreme Court has explained:

> Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release . . . . [Thus,] the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility. [*Id*. at 466.]

Inconsistent verdicts, however, require reversal where there is evidence, beyond the inconsistent verdict itself, that the jury was confused, did not understand the instructions, or did not know what it was doing. *Lewis*, 415 Mich at 450 n 9; *People v McKinley*, 168 Mich App 496, 510; 425 NW2d

460 (1988). Conversely, when a jury chooses not to convict because it has chosen to be lenient, a defendant "has no cause for complaint." *Lewis*, 415 Mich at 453.

Contrary to defendant's argument, there is no indication that the jury was confused, did not understand its instructions, or did not know what it was doing. Preliminarily, the mere fact that the jury reported that it was unable to reach a verdict on the third day of deliberations is not an indication that the verdict was the result of juror confusion. The jury did not communicate that it was confused about the elements of the crimes, the instructions, or any other relevant aspect, only that it had not been able to unanimously agree on a verdict. After the trial court provided appropriate supplemental instructions, the jury deliberated for an additional day and a half before reaching a verdict. Under these circumstances, it is speculative to assume that the inconsistent verdict was the result of juror confusion, rather than leniency, simply because at one point during deliberations the jury could not agree on a verdict.

Defendant argues that juror confusion is evident from the verdict form in which the jury convicted him of the murder of Robinson, but acquitted him of assault with intent to murder Houck, and acquitted him of the felony-firearm counts related to his felon-in-possession convictions. However, the verdict form is merely representative of the verdict itself, which is inadequate to demonstrate that the jury was confused, did not understand the instructions, or did not know what it was doing. *Lewis*, 415 Mich at 450 n 9. Again, juries are not held to any rules of logic, and are permitted to return inconsistent verdicts on multiple counts. *Vaughn*, 409 Mich at 465. Because there is no indication that the verdict was the product of juror confusion rather than leniency, any inconsistency in the verdict does not require reversal. Accordingly, defendant is not entitled to a new trial.

Affirmed.

/s/ Kathleen Jansen
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola

-4-