PEOPLE v JOHNSON

Docket No. 51423. Submitted October 7, 1981, at Lansing.—Decided
    December 16, 1981.

    Charles F. Johnson was convicted of carrying a concealed weapon
    and also pled guilty to being an habitual offender, Saginaw
    Circuit Court, Eugene Snow Huff, J. He appeals. *Held:*

    1. The trial court gave proper supplemental instructions to
    the jury upon being informed that the jury was deadlocked.
    The instructions did not depart substantially from those man-
    dated in *People v Sullivan,* 392 Mich 324 (1974), and were not
    coercive.

    2. The prosecutor's remarks during closing argument relative
    to the defendant's prior conviction for breaking and entering
    did not constitute error. Evidence of the conviction properly
    was admitted for the purpose of impeachment of the defendant
    and to provide insight regarding his motive for testifying. In
    addition, the trial court cautioned the jury as to the weight to
    be given to the prosecutor's inferences.

    3. The prosecutor's remarks regarding the veracity of certain
    prosecution witnesses were made in response to accusations by
    defense counsel to the contrary. There are no grounds for
    reversal on this issue.

    4. The prosecutor properly drew inferences for the jury from
    the facts presented and properly commented upon the testi-
    mony in the case.

    5. The defendant properly and voluntarily relinquished his
    right to an arraignment through his attorney.

    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 21 Am Jur 2d, Criminal Law § 303.
    76 Am Jur 2d, Trial § 1108.
[3] 5 Am Jur 2d, Appeal and Error § 623.
[4] 29 Am Jur 2d, Evidence § 327.
[5] 75 Am Jur 2d, Trial §§ 202, 204.
[6] 63 Am Jur 2d, Prosecuting Attorneys § 26.
    75 Am Jur 2d, Trial § 261.
[7] 21 Am Jur 2d, Criminal Law § 438.

1. Criminal Law — Jury Instructions — Deadlocked Juries — Appeal.

   Prospectively from August 2, 1974, a trial court in a criminal case, where confronted with a deadlocked jury, should instruct the jury: that in order to return a verdict, each juror must agree thereto, that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment, that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors, that in the course of deliberations a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous, and that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict; any substantial departure therefrom constitutes error and is grounds for reversal on appeal.

2. Criminal Law — Jury Instructions — Deadlocked Juries.

   A trial court's instructions to a deadlocked jury which mention the possibility of a successor jury but do not suggest that the deadlocked jury take a different approach in their deliberations or weaken the effect of a previous proper instruction do not depart substantially from the standard for supplemental jury instructions prescribed by the Supreme Court in *People v Sullivan*, 392 Mich 324 (1974), and are not coercive.

3. Criminal Law — Jury Instructions — Deadlocked Juries — Preserving Question.

   A criminal defendant need not object to supplemental instructions by a trial court to a deadlocked jury to preserve the issue of whether the instructions substantially depart from those prescribed by the Supreme Court for a review on appeal.

4. Evidence — Criminal Law — Prior Convictions — Impeachment.

   Evidence of a criminal defendant's prior conviction for a crime involving theft may be admitted for the purpose of attacking his credibility, and a prosecutor may comment upon such evidence during closing argument (MRE 609[a]).

5. Prosecuting Attorneys — Witnesses — Opening Statements.

   Allowance of remarks by a prosecutor regarding the veracity of certain prosecution witnesses in response to accusations by a defense counsel in his opening statement relative to the veracity of the witnesses does not constitute error requiring reversal.

6. PROSECUTING ATTORNEYS — COMMENTARY ON EVIDENCE.

   A prosecutor may draw inferences for a jury in a criminal case
   from facts appearing in the record and also may comment on
   testimony given in the case.

7. CRIMINAL LAW — ARRAIGNMENTS — WAIVER.

   A defendant may intentionally waive his right to an arraignment
   on criminal charges through his attorney, and a trial court, in
   order for the waiver to be proper, must determine that the
   defendant had the right, knew that he had the right, and freely
   and knowingly relinquished it (GCR 1963, 785.5[2]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Gregory E. Meter,* Assistant Prosecuting Attorney, for the people.

*Dwan & Schmidt, P.C.,* for defendant.

Before: ALLEN, P.J., and M. J. KELLY and J. J. KELLEY,* JJ.

PER CURIAM. Defendant was convicted by jury of carrying a concealed weapon, MCL 750.227; MSA 28.424. Prior to sentencing, defendant was charged with violation of the habitual offender statute, MCL 769.10; MSA 28.1082, for a third offense. At this time, defendant pled guilty to violation of the habitual offender statute for a second offense. He was thereupon sentenced to serve a minimum of 2-1/2 years to a maximum of 7-1/2 years in prison and appeals as of right.

Defendant was arrested during a raid on a pool hall in Saginaw which was prompted by reports to the police of illegal gambling on the premises. A police officer testified that when he announced the arrest, defendant, whose back was turned, reached

---

* Circuit judge, sitting on the Court of Appeals by assignment.

into his "waistband area", removed a revolver by the butt, and dropped it to the floor.

Defendant testified in his own defense and denied being in possession of a weapon that night.

During the course of deliberations, the jury reported that it was "hung" on the concealed weapon charge. The court reinstructed the jury on the process of reaching a verdict, on the charges and the information, and on the elements of the concealed weapon charge. Defendant raises three issues on appeal.

I

Defendant first contends that the trial court committed error requiring reversal in instructing the deadlocked jurors that, if they did not reach a verdict, it would be the duty of another jury no more intelligent and no more informed than they to decide the case. Defendant argues that this instruction constituted error because it was unlawfully coercive in light of the Supreme Court's holding in *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), and cases which have followed it.

In arguing that the trial court's instructions to the deadlocked jury coerced the jury into returning a guilty verdict, defendant applied the wrong standard, ignoring the proper "substantial departure" from ABA standard jury instruction 5.4[1] mandated by the Supreme Court in *Sullivan.*

In *Sullivan,* the Supreme Court thoroughly discussed the subject of the supplemental *Allen* charge, the instruction to a deadlocked jury, so-

---

[1] ABA Project on Minimum Standards for Criminal Justice, *Trial by Jury,* § 5.4.

called because the instruction received the approval of the United States Supreme Court in *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

The *Sullivan* Court found that there was an inherent danger in the possibility that the *Allen* charge may be worded coercively and so applied in some cases. To eliminate this danger of coercive effect, the Court ruled that from the date of the *Sullivan* opinion ABA jury standard 5.4 would be adopted as the deadlocked jury instruction and that any substantial departure therefrom shall be grounds for error requiring reversal. *Sullivan, supra,* 341.

The ABA jury standard 5.4, adopted by the *Sullivan* Court, reads as follows:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to

continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." *Id.,* 335.

There has been some confusion as to the application of this standard. In *People v Harman,* 98 Mich App 541, 543; 296 NW2d 303 (1980), a panel of this Court, in a per curiam opinion, declared that *Sullivan* stated that a claim of coercion must be determined on a case-by-case basis. The Court went on to apply a coercion analysis and conceded that the facts of *Harman* did not indicate that the jury was coerced by the "hung jury" instructions. In alleging jury coercion in the instant case, defendant has urged this Court to adopt the *Harman* reading of *Sullivan.*

In a more recent decision, this Court declared that the other decisions of the Court of Appeals which have suggested that deadlocked jury instructions given in post-*Sullivan* trials are to be examined on a case-by-case basis for their coercive effect, *Harman* being among them, were wrongly decided. *People v Allen,* 102 Mich App 655, 659; 302 NW2d 268 (1981). The *Allen* panel reasoned that the Supreme Court in *Sullivan* intended to announce a prophylactic rule eliminating the necessity of future appellate inquiry into the coercive effect of any number of possible variants on the *Allen* charge. One form was approved, the ABA instruction 5.4, which was to be the only instruction used in the future. Because the rule was made prospective, *Allen*-type charges in trials occurring before *Sullivan* were still subject to a case-by-case

coercion analysis, but the only case-by-case inquiry necessary in trials taking place after *Sullivan* would involve whether the instruction given was a "substantial departure" from the ABA charge. *Id.,* 659.

This reasoning is consistent with a post-*Sullivan* holding in *People v Dupie,* 395 Mich 483, 493; 236 NW2d 494 (1975). There the Court, faced with resolution of a deadlocked jury instruction in a pre-*Sullivan* case, stated that where the propriety of a pre-*Sullivan* supplemental instruction is to be decided the *Sullivan* Court had indicated that the presence or absence of coercion would be determined on a case-by-case basis but that the prospectively adopted ABA jury standard 5.4 would cover the circumstance of supplemental *Allen* charges arising after the decision in *Sullivan.*

We conclude that *People v Allen, supra,* correctly decided that the proper standard for determining the propriety of post-*Sullivan* deadlocked jury instructions is the "substantial departure" test articulated in *Sullivan* and in *Dupie* and not the coercion standard urged by defendant and improperly applied in *Harman.*

Therefore, because the trial in the instant case occurred after the *Sullivan* opinion, a determination of this issue properly involves whether the trial court's instructions to the jury substantially departed from the ABA jury instruction 5.4 mandated by *Sullivan.* A review of the record indicates that such a departure did not occur.

In his charge to the jury, given before the jury departed to deliberate, the trial judge gave the ABA standard jury instruction 5.4 almost verbatim. According to the ABA standard instruction, after the jury has heard the instruction and has been unable to agree, the court may require the

jury to continue their deliberations and may give
or repeat an instruction previously given. In the
instant case, the trial court chose not to reinstruct
on the entire 5.4 instruction but only reminded
the jury to reexamine the questions with proper
regard and consideration for the opinions of the
other jurors, to keep an open mind to the other
arguments in points of view, and to make every
reasonable effort to reach a verdict. The reinstruc-
tions indicate that the trial court was more con-
cerned with attempting to facilitate a solution to
the problems of the jury by rereading the informa-
tion, by reinstructing on the elements of the
charged crime, and by answering specific questions
of the jurors.

Mention by the trial court of the jury's quality
and fitness relative to another jury does not negate
the instructions on proper deliberation, impartial
consideration, and adherence to honest conviction
which are at the heart of the ABA standard in-
struction. The trial court's mention of another jury
did not suggest that the present jury should take a
different approach in their deliberations nor did it
weaken the effect of the previous ABA standard
instruction on the jury. Therefore, we hold that
the court's mention of the possibility of a successor
jury was not a departure from the proper instruc-
tion mandated in *Sullivan* and given by the trial
court in the instant case, and, thus, no error arose
as a result of these comments. The error which
occurred in *People v Goldsmith,* 411 Mich 555; 309
NW2d 182 (1981), is certainly not present here,
and we find that the trial court's instructions were
not coercive.

Plaintiff also argues that this issue has not been
preserved on appeal because defendant failed to
object to the instruction at trial. The same argu-

ment was posed in *Goldsmith.* Despite a failure to object, the issue still involves whether the error requires reversal.

## II

The second issue raised is whether the prosecutor's closing argument diverted the jury's attention and possibly persuaded them of defendant's bad character.

We find no error in the prosecutor's remarks. Evidence of defendant's prior conviction was properly admitted under MRE 609(a) and formed the basis for the habitual offender charge in the instant case. It clearly had a bearing on defendant's veracity and motive in denying that he had a gun in his possession at the time of the arrest and also in rejecting the testimony of the police officers as lies. This relationship between the prior conviction and defendant's present veracity provides the purpose for the prosecutor's mention of the conviction in his closing argument. In addition, because no objection to these remarks was raised during trial, they do not warrant reversal unless they are found to constitute manifest injustice. *People v Duncan,* 402 Mich 1, 15-16; 260 NW2d 58 (1977), *People v McCain,* 84 Mich App 210, 215; 269 NW2d 528 (1978). We find no evidence of manifest injustice inherent in the inclusion of evidence of the prior conviction where the issue is clearly one of credibility between defendant and the officer-witnesses, where the evidence was admitted for the proper purpose of impeachment, and where the evidence provides insight into the defendant's motive for testifying as he did. Furthermore, the trial court instructed the jurors that they were to disregard anything said by an attorney not supported by the

evidence or by their own general knowledge and experience. The jurors thus knew that they were free to accept or reject the inferences raised by the prosecutor's argument. See *People v Lyle Brown,* 37 Mich App 25, 30; 194 NW2d 450 (1971).

Defendant's allegation that the prosecutor personally vouched for the veracity of the officers who testified during trial is without merit because the prosecutor's remarks were made in response to defense counsel's accusation in his opening statement that the officer-witnesses who would offer testimony against defendant were not telling the truth. *People v Giombetti,* 97 Mich App 399, 405; 296 NW2d 41 (1980), see also *Duncan, supra,* 16, *People v Green,* 34 Mich App 149; 190 NW2d 686 (1971), *lv den* 386 Mich 769 (1971).

Defendant further maintains that the prosecutor's reference to the fact that defendant was arrested during a gambling raid and that people were gambling at the scene amounts to error requiring reversal because it put defendant into a bad light before the jury since defendant was not on trial for gambling.

We must reject this claim. A prosecuting attorney has the right to draw inferences for the jury from the facts appearing in the record. *People v Morlock,* 233 Mich 284, 286; 206 NW 538 (1925), *People v Caldwell,* 78 Mich App 690, 692; 261 NW2d 1 (1977). Not only may the prosecutor draw inferences, but he also may comment upon the testimony in the case. *People v Cona,* 180 Mich 641; 147 NW 525 (1914), *Caldwell, supra,* 692.

The record reveals that defense counsel, in his opening statement, informed the jury that people,

including defendant, were "probably" gambling at the place and time of defendant's arrest. Furthermore, defendant admitted that he was holding a pair of dice when he was arrested. The circumstances involving defendant's arrest, a raid on a suspected gambling establishment and the arrest of suspected participants engaging in the gambling activities, were inextricably connected with the charges against defendant in the present case and, thus, were properly placed before the jury and mentioned by the prosecutor during his closing argument.

## III

Defendant's third allegation of error, that he was improperly arraigned on the information, is without merit.

That a defendant may intentionally relinquish his procedural right to an arraignment through his attorney has been established in *People v Phillips,* 383 Mich 464, 470; 175 NW2d 740 (1970), following *Fay v Noia,* 372 US 391; 83 S Ct 822; 9 L Ed 2d 837 (1962). Necessary to a proper relinquishment, because it is voluntary, is a determination that the person had a right to arraignment, knew he had the right, and freely and knowingly elected not to exercise it. *Phillips, supra,* 470. At the scheduled arraignment in the instant case, it was discovered that defendant was in Jackson prison for a parole violation hearing. The court determined that it would reschedule the arraignment but was persuaded by defense counsel, who acknowledged being in possession of a copy of both the original information and the supplemental information, to accept a filing of a waiver of arraignment pursuant to the court rule and that

that filing would serve as arraignment. This "record of arraignment on information" form indicated that defendant and his attorney waived formal arraignment, that the purpose of the information and the waiver had been explained to defendant, and that the document had been signed by both defendant and his attorney.

Under these circumstances, where defense counsel initiated the waiver procedure, where the waiver was accomplished according to procedures set forth in the court rule, where there was no indication that defendant did not understand his right to arraignment, and where defendant elected to follow his attorney's decision to waive the arraignment, we find that defendant's waiver was freely and knowingly executed and was proper according to GCR 1963, 785.5(2). See also *Phillips, supra,* 471.

Defendant's conviction is affirmed.