PEOPLE v ATKINSON

Docket No. 52643. Submitted October 6, 1981, at Grand Rapids.—
Decided November 2, 1982.

James H. Atkinson, Jr., was convicted of prison escape and of
being a fourth-felony habitual offender, Kent Circuit Court,
George R. Cook, J. Defendant appeals, alleging that the trial
court erred in its instructions to the jury when the jury
reported that they were deadlocked, that the 11-day delay
between his arrest and his arraignment requires reversal, and
that the trial court lost jurisdiction because he was not brought
to trial within 180 days after the prosecutor received the
requisite notice of his incarceration. *Held:*

1. A trial court's instructions to a deadlocked jury must not
substantially depart from the accepted American Bar Associa-
tion Standard Jury Instruction for use in such circumstances.
In this case, the instructions given when the jury was dead-
locked, on both the principal charge and the supplemental
habitual offender charge, constituted such a substantial depar-
ture from the ABA standard instruction. The error mandates
reversal.

2. The 180-day rule applies to any untried charge regardless
of the nature of the punishment which may be imposed. The
rule was not violated in this case because the delay was
reasonable under the circumstances and the prosecution dem-
onstrated good faith in keeping the case active.

3. The delay in arraignment did not result in prejudice to the
defendant which would support the defendant's claim that the
case should have been dismissed.

Reversed and remanded.

R. ROBINSON, J., would hold that the trial court's jury in-
structions on the principal charge did not substantially depart

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 76 Am Jur 2d, Trial § 1054 *et seq.*
Instructions urging dissenting jurors in state criminal case to give
due consideration to opinion of majority (Allen charge)—modern
cases, 97 ALR3d 96.
[3-5] 21A Am Jur 2d, Criminal Law §§ 850, 854, 859, 860, 863.
[6] 21 Am Jur 2d, Criminal Law §§ 408, 437.

from the ABA standard instruction and that reversal of the conviction on that charge is not required. He concurred, however, in holding that the instruction on the habitual offender charge requires reversal of that conviction.

OPINION OF THE COURT

1. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURY.

Michigan has approved the use of the American Bar Association Standard Jury Instruction 5.4 where a jury is unable to agree on a verdict, and any instruction given which is a substantial departure from the standard instruction is error requiring reversal; any language aimed at encouraging the jury to reach a decision constitutes a "substantial departure" from the standard instruction unless the language used is sanctioned by the standard instruction.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY R. ROBINSON, J.

2. CRIMINAL LAW — JURY INSTRUCTIONS — DEADLOCKED JURY.

*An instruction to a deadlocked jury which encouraged the jurors to re-examine their views while admonishing them not to abandon an honest conviction for the mere purpose of returning a verdict, which made it clear they would not be required to deliberate for an unreasonable length of time, and which attempted to reassure the jury that they were as competent as anyone else to reach a verdict did not substantially depart from American Bar Association Standard Jury Instruction 5.4 so as to require reversal of the defendant's convictions.*

3. CRIMINAL LAW — INMATES — 180-DAY RULE.

The statute which provides that a prosecution against an inmate of a state penal institution on an untried charge must be commenced within 180 days after a prosecutor receives notice of the defendant's incarceration applies to any untried charge regardless of the nature of the punishment which may be imposed (MCL 780.131; MSA 28.969[1]).

4. CRIMINAL LAW — INMATES — 180-DAY RULE.

The statutory requirement that an inmate of a state penal institution shall be brought to trial within 180 days after a prosecutor receives notice of the defendant's incarceration does not mean that trial must be concluded, or even commenced, within that period of time; rather, the statute obligates the prosecutor to take good-faith action during the 180-day period and to proceed promptly in readying the case for trial (MCL 780.131; MSA 28.969[1]).

5. CRIMINAL LAW — DELAY IN BRINGING CASE TO TRIAL.
    Generally, unexplained delays in bringing a case to trial are
    attributable to the prosecution.

6. CRIMINAL LAW — ARRAIGNMENT — DELAY IN ARRAIGNMENT.
    An arrested person must be taken before a magistrate for ar-
    raignment without unnecessary delay; when considering a de-
    fendant's claim of prejudice resulting from a delayed arraign-
    ment courts emphasize the reason for the delay rather than the
    length of delay and, where neither a confession nor inculpatory
    statements were obtained from the defendant during the period
    prior to the arraignment, the defendant is. not entitled to a
    dismissal solely because of the delay (MCL 764.26; MSA 28.885).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for the people.

*George S. Buth,* for defendant on appeal.

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and R. ROBINSON,* JJ.

R. M. MAHER, P.J. Defendant was convicted by a jury of prison escape, MCL 750.193; MSA 28.390, and of being a fourth-offense habitual offender, MCL 769.12, 769.13; MSA 28.1084, 28.1085. Sentenced to three to ten years in prison, he appeals as of right.

Defendant raises three claims of error. First, the defendant claims the trial court committed error in its instructions to the jury. Second, defendant argues that the delay between his arrest and arraignment requires reversal. Finally, defendant argues that the trial court lost jurisdiction because he was not brought to trial within the.180 days required by MCL 780.131; MSA 28.969(1). We concur in the results reached by Judge ROBINSON regarding the last two of defendant's three claims

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of error. We have concluded, however, that the trial court committed reversible error in its instructions to the jury.

Defendant contends that the trial court deviated improperly from ABA Standard Jury Instruction 5.4 in its charge to the jury.[1] The ABA charge, approved in *People v Sullivan,* 392 Mich 324, 327-329; 220 NW2d 441 (1974), sets out permissible instructions to a jury unable to agree on a verdict.

In *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981), the Supreme Court confirmed that any substantial departure from the ABA charge is reversible error. Coercive effect is irrelevant. *People v Allen,* 102 Mich App 655, 658-660; 302 NW2d 268 (1981), *lv den* 411 Mich 870 (1981), provides the proper standard of review:

"We believe that the Supreme Court in *Sullivan* intended to announce a prophylactic rule eliminating the necessity of future appellate inquiry into the coercive effect of any number of possible variants on the *Allen* charge *[Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896)]. One form was approved, and the Court clearly indicated its intent that only that form be used in the future. Because the new rule was made prospective, *Allen*-type charges in trials occurring before *Sullivan* were still subject to a case-by-case analysis, but the only case-by-case inquiry necessary in trials taking place after *Sullivan* involves whether the instruction given is a 'substantial departure' from the ABA charge. * * * To the extent that other decisions of this Court have suggested that deadlocked-jury instructions given in post-*Sullivan* trials are to be examined on a case-by-case basis *for their coercive effect,* we believe they were wrongly decided.

"* * * We are not concerned with whether such statements are true or whether they are coercive. Our sole inquiry is whether they represent a substantial

[1] The standard jury instruction is set forth by the dissent. See *infra* fn 1.

departure from the ABA charge * * *. It makes no difference that in *Sullivan* the Supreme Court held that the instruction challenged in the instant case was not coercive. The trial which we are reviewing took place after *Sullivan* so that questions of coercion are no longer involved. The Supreme Court could not have more clearly directed that the issue is no longer one of 'coercion' but of 'substantial departure' from the ABA charge."

See, also, *People v Johnson,* 112 Mich App 41, 44-47; 314 NW2d 794 (1981).[2]

In the case at bar, the trial court made several remarks which, taken as a whole, clearly constituted a substantial departure from the ABA charge.

After deliberating for less than four hours on the escape charge, the jury indicated that it was unable to reach a unanimous verdict. In an attempt to avoid a hung jury, the trial court gave the following instructions:

*"The Court:* Mr. Foreman, we have received this note from you: 'We feel we cannot reach a unanimous decision.'

"Ladies and gentlemen of the jury, if you cannot agree on a verdict, I want to tell you what will happen. The court will have to declare a mistrial, which means it must be retried before another 12 people at the next term of court. I cannot believe that the next jury panel will produce any 12 people who are more intelligent and more conscientious than the 12 of you. I want to re-read some of my instructions to you."

The trial court then gave several instructions

---

[2] As the dissent points out, I have cited *People v Johnson,* 112 Mich App 41; 314 NW2d 794 (1981), even though the *Johnson* panel found that instructions similar to those given by the trial court in this case did not substantially depart from the ABA charge. Although I agree with the standard announced in *Johnson,* I believe that the "substantial departure" test was applied incorrectly.

which substantially conformed to the ABA charge. However, the court followed the permissible instructions with these remarks:

"*The Court:* Then I'd like to have you go back and consider what I have just said. Now, I will not keep you here past noon. I will urge you to try and decide on a verdict, because eventually, 12 people will have to decide this case, and I don't think that I have ever seen 12 nicer people than you."

Shortly thereafter, the jury returned a verdict of guilty.

These extraneous remarks clearly amount to a substantial departure from the ABA charge.

After approximately three hours of deliberation on the supplemental charge of being a fourth-felony offender, the jury once again indicated that it was unable to reach a unanimous verdict. In an attempt to avoid a hung jury on this charge, the trial court made the following remarks:

"*The Court:* Mr. Foreman, would you stand, please? We have received this note from you: 'We feel a unanimous decision cannot be reached.'

"I think that somehow I've got you confused, and I wonder if there is some additional instruction that might help you, because the issue is not really that complicated. Either he is a fourth-felony offender, or he is not, and let me read to you again what I read to you last week.

"If you cannot agree on a verdict, I want to tell you what will happen. The court will have to declare a mistrial, which means that it must be re-tried before another 12 people at the next term of court. I cannot believe that the next jury panel will produce any 12 people who are more intelligent and more conscientious than the 12 of you, and, in other words, eventually, 12 Kent County residents are going to have to answer that question.

"Mr. Foreman, do you think that another 45 minutes might be productive?"

Manifestly, these remarks constitute an even *more* serious departure from the ABA charge.

Under *Allen, supra,* any language employed by the trial court aimed at encouraging the jury to reach a decision constitutes a "substantial departure" from the ABA charge unless the ABA standard instruction "sanctions such a charge". *Goldsmith, supra,* 561. Coercive effect is irrelevant.

Since the ABA standard instruction does not sanction the irregular remarks made by the trial court in the case at bar, and since these remarks are aimed at encouraging the jury to reach a decision, the defendant's conviction must be reversed.

Reversed and remanded for a new trial.

D. E. HOLBROOK, JR., J., concurred.

R. ROBINSON, J. *(dissenting in part, concurring in part).* I respectfully dissent. I agree with the majority that subsequent to *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), coercion is no longer the standard and that supplemental instructions which substantially depart from the ABA standard require reversal. I find that the supplemental instruction on the principal charge did not substantially depart from the approved standard.

In accordance with ABA Standard Jury Instruction 5.4(a)(i-v),[1] the trial court encouraged the ju-

---

[1] ABA Standard Jury Instruction 5.4 provides:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

rors to re-examine their views while admonishing them not to abandon an honest conviction for the mere purpose of returning a verdict. Additionally, as provided in instruction 5.4(b), the court made it clear that the jury would not be required to deliberate for an unreasonable length of time.[2] Appar-

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft, 1968), § 5.4.

[2] The trial court gave the following supplemental instruction on the principal charge:

"*The Court:* Mr. Foreman, we have received this note from you: 'We feel we cannot reach a unanimous decision.'

"Ladies and gentlemen of the jury, if you cannot agree on a verdict, I want to tell you what will happen. The court will have to declare a mistrial, which means it must be retried before another 12 people at the next term of court. I cannot believe that the next jury panel will produce any 12 people who are more intelligent and more conscientious than the 12 of you. I want to re-read some of my instructions to you.

"Before deciding the case, give impartial consideration to the views of your fellow jurors. This means that you should give respectful consideration to one another's views and talk over differences of opinion in a spirit of fairness and frankness. It is natural that differences of opinion will arise. When they do, each of you should not only express your opinion, but the facts and reasons upon which you base it. By reasoning the matter out, it is often possible for all jurors to agree. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced that it is wrong. However, none of you should surrender your honest conviction as to the weight and affect *[sic]* of the evidence or lack of

ently, the majority objects to the court's statement: "I will urge you to try and decide on a verdict, because eventually, 12 people will have to decide this case and I don't think that I have ever seen 12 nicer people than you". I believe the court was merely reassuring the jury that they were as competent as anyone else to reach a verdict based on the evidence presented. There was no improper intimation that the jury had failed in its purpose. *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981). The court's additional remark was similar to that in *People v Johnson,* 112 Mich App 41, 48; 314 NW2d 794 (1981), relied upon by the majority. There, the panel found no error.

evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

"Now, Mr. Foreman, would you like a coffee break at this time?

"*Mr. Foreman:* Yes.

"*The Court:* Then I'd like to have you go back and consider what I have just said. Now, I will not keep you here past noon. I will urge you to try and decide on a verdict, because eventually, 12 people will have to decide this case, and I don't think that I have ever seen 12 nicer people than you.

"Why don't you take a 15-minute coffee break, and let the clerk now when you're ready to start again. Thank you."

On the supplemental habitual offender charge, the court gave the following instruction after the jury was uanble to return a verdict:

"*The Court:* Mr. Foreman, would you stand please? We have received this note from you: 'We feel a unanimous decision cannot be reached.'

"I think that somehow I've got you confused, and I wonder if there is some additional instruction that might help you, because the issue is not really that complicated. Either he is a fourth-felony offender, or he is not, and let me read to you again what I read to you last week.

"If you cannot agree on a verdict, I want to tell you what will happen. The court will have to declare a mistrial, which means that it must be re-tried before another 12 people at the next term of court. I cannot believe that the next jury panel will produce any 12 people who are more intelligent and more conscientious than the 12 of you, and, in other words, eventually, 12 Kent County residents are going to have to answer that question.

"Mr. Foreman, do you think that another 45 minutes might be productive?

"*The Foreman:* Yes, I think it would.

"*The Court:* Thank you."

Defendant's conviction for prison escape should be affirmed. I agree with the majority, however, that the supplemental instruction given by the trial court on the habitual offender charge was a substantial departure from the ABA standard and requires reversal.

Even though the majority's disposition of the supplemental instruction issue requires reversal, the Court must address defendant's two other claims of error since they are jurisdictional in nature. Defendant claims that the trial court lacked jurisdiction because he was not brought to trial within 180 days as required by the applicable statute, MCL 780.131; MSA 28.969(1). There has been a split of authority among the panels of this Court as to the applicability of the 180-day rule to offenses committed by a prison inmate where any sentences for such offenses would be mandatorily consecutive. This issue was recently resolved by the Michigan Supreme Court in *People v Woodruff,* 414 Mich 130; 323 NW2d 923 (1982), where the Court held that the 180-day rule applies to any untried charge, regardless of the nature of the punishment which may be imposed. I find, however, that the rule was not violated in the instant case.

The courts of this state have made it clear that the statutory requirement that "such inmate shall be brought to trial within 180 days" does not mean that trial must be concluded, or even commenced, within that period of time. Rather, the statute obligates the prosecutor to take good-faith action on the case during the 180-day period and to proceed promptly in readying the case for trial. *People v Castelli,* 370 Mich 147; 121 NW2d 438 (1963); *People v Wilder,* 51 Mich App 280; 214 NW2d 749 (1974). If the prosecutor takes good

faith action to commence proceedings, jurisdiction thereafter will be lost only if the initial action is followed by an inexcusable delay that evidences an intent not to bring the case to trial promptly. *People v Hendershot,* 357 Mich 300; 98 NW2d 568 (1959). As a general rule, unexplained delays in bringing a case to trial are attributable to the prosecution. *People v Forrest,* 72 Mich App 266; 249 NW2d 384 (1976).

Examination of the lower court record shows that defendant was arrested on September 7, 1979, and a complaint and warrant were signed September 11, 1979. A preliminary examination was held September 27, 1979. The information and supplemental information charging defendant were filed in Kent County Circuit Court on October 8, 1979. On January 2, 1980, a pretrial conference was set for February 15, 1980, and the trial was set for March 19, 1980. Defense counsel moved to quash for failure to establish venue on February 19, 1980. The motion was heard and an order remanding the case back to district court for a preliminary examination was issued February 22, 1980. The continuing preliminary examination was held February 28, 1980. Defendant filed a motion to dismiss on March 10, 1980, which was denied March 17, 1980. The jury trial was held March 19-21 and 24, 1980.

Defendant was tried and convicted on an unrelated charge January 28 through 31, 1980. When a defendant is to be tried on two unrelated charges, the local practice in Kent County is to schedule the trials so they are not heard by the same jury panel. This is to avoid undue prejudice to the defendant. The jury panel serving in January did not complete its term until February 29, 1980. Although a delay caused by an intervening trial

on an unrelated charge does not automatically result in a showing of good faith, *People v Hill*, 402 Mich 272; 262 NW2d 641 (1978), the delay under these circumstances was reasonable. The second trial was scheduled within 8 days of the 180-day time limit. The prosecution has demonstrated good faith in keeping the case alive.

Defendant argues that a delay of 11 days between his arrest and arraignment requires reversal. Defendant claims that the unexplained delay resulted in severe prejudice to his case, since on September 17, 1979, ten days after defendant's arrest and one day prior to his arraignment, the only witness who could support his defense of duress left the jurisdiction of the court.

MCL 764.26; MSA 28.885 requires that an arrested person must be taken before a magistrate after his arrest "without unnecessary delay". This statute has long been enforced by excluding any evidence obtained as a product of the unreasonable delay. *People v McCoy*, 29 Mich App 589; 185 NW2d 588 (1971); *People v Nawrocki*, 6 Mich App 46; 150 NW2d 516 (1967), *cert den* 389 US 942; 88 S Ct 304; 19 L Ed 2d 296 (1967). The emphasis of our courts has been on the reason for delay, rather than the length of delay. See *People v Harper*, 365 Mich 494, 503; 113 NW2d 808 (1962), *cert den* 371 US 930; 83 S Ct 302; 9 L Ed 2d 237 (1962); *People v Farmer*, 380 Mich 198, 205; 156 NW2d 504 (1968). When neither a confession nor inculpatory statements are obtained during the period prior to the delayed arraignment, the defendant is not entitled to a dismissal. *People v Griffin*, 33 Mich App 474; 190 NW2d 266 (1971); *People v Burd*, 39 Mich App 22; 197 NW2d 76 (1972).

Defendant cites no authority to support his claim that dismissal is the proper remedy when

the alleged prejudice is loss of a defense witness. Assuming, *arguendo,* that defendant's claim is valid, I am not persuaded that defendant was not prejudiced by his own negligence since my reivew of the record reveals that while defendant was not formally informed of the charge of escape from prison until arraignment, he had actual knowledge of the charge the day he was arrested. I note that defendant was properly returned to prison as an escaped inmate. See *People v Coss,* 18 Mich App 419; 171 NW2d 231 (1969); *People v Nawrocki, supra.*

I would affirm the conviction on the principal charge, and reverse defendant's habitual offender conviction.