PEOPLE v ROUSE

Docket No. 262417. Submitted September 5, 2006, at Detroit. Decided
    November 2, 2006, at 9:05 a.m. In lieu of granting leave to appeal, the
    judgment of the Court of Appeals is reversed and the defendant's
    conviction is reinstated, 477 Mich ___.

    John A. Rouse was convicted by a jury in the Dickinson Circuit Court,
    Mary B. Barglind, J., of two counts of second-degree criminal sexual
    conduct. The defendant appealed, challenging the court's supplemen-
    tal instructions to the jury after the jury indicated that it had reached
    an impasse.

    The Court of Appeals *held*:

    The trial court's supplemental instructions constituted a sub-
    stantial departure from the Supreme Court's mandated instruc-
    tions and require reversal. The Supreme Court mandated the use
    of former ABA Standard 5.4, now ABA Standards for Criminal
    Justice, Discovery and Trial by Jury (3d ed), Standard 15-5.4, in
    instructions read to a deadlocked jury. That standard is incorpo-
    rated in CJI2d 3.12. Any substantial departure from the ABA
    standard requires reversal. Whether a deviation is substantial
    depends on whether the deviation renders the instruction unfair
    because it might have been unduly coercive, causing a juror to
    abandon his or her conscientious dissent and defer to the majority
    solely for the sake of reaching agreement. An instruction that calls
    for the jury, as part of its civic duty, to reach a unanimous verdict
    and that contains the message that the failure to reach a verdict
    constitutes a failure of purpose is a substantial departure from the
    requirements. Instructions given before deliberations begin are
    less likely to have a coercive effect, however, than supplemental
    instructions given after a jury has begun deliberating. Before the
    trial court gave CJI2d 3.12 in this case, it also gave an instruction
    that included a statement that if the jurors truly could not agree,
    it would result in everyone, including the child victim, coming back
    and going through the entire process again with a new jury. The
    trial court characterized this as a difficult situation and indicated
    that justice would be compromised as a result. This was coercive
    because it contained a message that a failure to reach a verdict
    would constitute a failure of purpose and tended to pressure the

jury to reach a verdict as part of its civic duty. The instruction also, in effect, pressured the jury to make a decision on the basis of emotion or sympathy for the vulnerable child victim of sexual abuse and render a verdict to avoid the necessity of the victim's being subjected to the trauma of another trial. The fact that the improper instruction was given after the jury had reached an impasse magnified its coercive effect.

Reversed and remanded.

JANSEN, J., dissenting, disagreed that the trial court's remarks appealed to the jury's sense of civic duty or suggested a failure of purpose. They did not coerce the jurors by informing them that they were required to reach a verdict. The remarks did not constitute a substantial departure from the mandated instructions, and the case should be affirmed.

JURY — INSTRUCTIONS — DEADLOCKED JURY — CRIMINAL LAW.

A substantial departure from the instructions required to be given to a deadlocked jury in a criminal case require reversal; an instruction is a substantial departure if it is unduly coercive, that is, if it could cause a juror to abandon his or her conscientious dissent and defer to the majority solely for the sake of reaching agreement; an instruction that calls for the jury, as part of its civic duty, to reach a unanimous verdict and that contains the message that the failure to reach a verdict constitutes a failure of purpose is a substantial departure; an instruction that suggests that justice would be compromised if a jury cannot reach a verdict and that everyone involved will need to return to go through the process again with a new jury is coercive; an instruction that pressures the jury to make a decision on the basis of emotion or sympathy for a victim, such as an appeal for the jury to render a verdict to avoid the necessity of a child victim being subjected to the trauma of another trial, is also coercive; instructions given before a jury begins deliberating are less likely to have a coercive effect than supplemental instructions given to a jury that has already begun deliberating (CJI2d 3.12).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Christopher Ninomiya*, Prosecuting Attorney, and *Nancy Mullett*, Special Assistant Attorney General, for the people.

*Nieuwenhuis Law Offices, P.C.* (by *Helen C. Nieuwenhuis*), for the defendant.

Before: BORRELLO, P.J., and JANSEN and COOPER, JJ.

BORRELLO, P.J. Defendant appeals as of right his jury-based convictions of two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c. Defendant was sentenced to 11 to 30 years in prison. We reverse and remand for a new trial. This appeal is being decided without oral argument. MCR 7.214(E).

At trial, the complainant testified that defendant engaged in sexual contact with her numerous times during the summer of 2003. The complainant was less than 13 years of age at the time.

Following the completion of proofs and closing arguments, the jury began its deliberations. On the first day, the jury deliberated for approximately 6½ hours, with breaks for dinner and to hear testimony replayed. At about 3:35 p.m. on the second day of deliberations, the trial court received a note from the jury that read: "We have discussed and explored all the avenues in this case. We are at an impasse." The trial court instructed the jury as follows:

> At this point in time I am going to ask that you continue to deliberate. I am going to remind you of some of the instructions that I have read to you in the past with regard to your deliberation.
>
> There is no fixed set of time as to how long we will allow a jury to deliberate before we determine it to be a mistrial. *But in considering everything that I will read to you, also consider that if you are not truly able to reach an agreement on this in compliance with the instruction that I will give you, it will result in everybody coming back, the victim and the defendant included, and going through this entire process again with another jury. That is a difficult situation. It is, it is, you know, in terms of the justice that we are rendering in this case, I think is somewhat compromised if we are unable to reach a verdict one way or the other in this case.* [Emphasis added.]

Immediately following this instruction, the trial court instructed the jury pursuant to CJI2d 3.12, commonly referred to as the deadlocked-jury instruction:

> However, as I will read you this instruction, if one or more of you are truly convicted to your beliefs, which ever way it is, I don't want you to reach an agreement just to reach an agreement because of what I have just told you. I want you to follow this instruction, search your conscience, search your reasons for what ever your position is, and give this matter some more consideration, given these parameters.
>
> You have returned from deliberations indicating that you believe you cannot reach a verdict. I'm going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict. As you deliberate, please keep in mind the guidelines that I gave you earlier. Remember it is your duty to consult with your fellow jurors and to try to reach an agreement if you can do so without violating your own judgment. To return a verdict you must all agree and the verdict must represent the judgment of each of you.
>
> As you deliberate you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of fairness and frankness. Naturally there will be differences of opinion. You should each not only express your opinion but also give the facts and the reasons on which you base it. By reasoning the matter out, jurors can often reach an agreement. When you continue your deliberations do not hesitate to rethink your own views and change your opinion if you decide it was wrong.
>
> However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching an agreement.

When the trial court completed the supplemental instructions, defense counsel objected to the instructions and moved for a mistrial. According to defense counsel, the effect of the trial court's instructions was

to inform the jury that it would be a waste of time and money if it did not reach a verdict. Defense counsel also asserted that the first supplemental instruction was not part of the standard jury instruction for a deadlocked jury. The trial court denied defense counsel's motion for a mistrial, reasoning that there was nothing inappropriate in its instructions. The jury deliberated for approximately $5\frac{1}{2}$ hours after the trial court instructed it to continue deliberating and ultimately convicted defendant of two counts of CSC II and acquitted him of a third count of CSC II.

The sole issue on appeal concerns the trial court's supplemental instructions to the jury after the jury informed the court that it had reached an impasse in the afternoon of the second day of deliberations. We review de novo claims of instructional error. *People v Marion*, 250 Mich App 446, 448; 647 NW2d 521 (2002).

In *People v Sullivan*, 392 Mich 324, 341-342; 220 NW2d 441 (1974), our Supreme Court adopted American Bar Association (ABA) Standard 5.4 for the supplemental instruction that should be read to a deadlocked jury. ABA Standard 5.4[1] provides:

"Length of deliberations; deadlocked jury.

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto;

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

---

[1] CJI2d 3.12 is the instruction for deadlocked juries. This instruction incorporates and adapts the ABA's standard. See *People v Pollick*, 448 Mich 376, 382 n 12; 531 NW2d 159 (1995). The ABA standard, with only stylistic changes made, is currently found at ABA Standards for Criminal Justice, Discovery and Trial by Jury (3d ed), Standard 15-5.4, p 255.

"(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

"(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

"(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." [*Sullivan, supra* at 335, quoting ABA Standard 5.4.]

The *Sullivan* Court held that "[a]ny substantial departure" from ABA Standard 5.4 "shall be grounds for reversible error." *Id.* at 342. The purpose of giving the instruction is to "guard against coercion." *Id.* at 334. According to the Court in *Sullivan*:

The optimum instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision.

If the instruction given "can cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement", then that charge should not be used. Such results obviously have no place in a fair criminal justice system." [*Id.*]

In *People v Hardin*, 421 Mich 296; 365 NW2d 101 (1984), our Supreme Court further defined when an instruction is unduly coercive and constitutes a sub-

stantial departure from ABA Standard 5.4. According to
*Hardin*, "[w]hether any deviation from ABA standard
jury instruction 5.4 is substantial in the sense that
reversal is required depends upon whether the devia-
tion renders the instruction unfair because it might
have been unduly coercive." *Id.* at 316. Our Supreme
Court further explained that, in *Sullivan*,

> [t]his Court simply stated that any substantial departure
> from ABA standard jury instruction 5.4 "shall be grounds
> for reversible error." Our adoption of ABA standard 5.4 was
> not designed to create or promote an appellate exercise in
> semantic comparison as to whether the syntax and lan-
> guage of a given instruction comports with that of ABA
> standard 5.4. The significance of a "substantial *departure*"
> —*i.e.*, one which is grounds for reversible error—is not just
> a difference in language, style, or syntax. The significance
> of a "substantial departure" is the risk that the resultant
> instruction will be more coercive than the ABA instruction.
> The test for determining whether a departure from ABA
> standard 5.4 is substantial cannot rest simply on a gross
> difference in language. The instruction that departs from
> ABA standard 5.4 must also have an undue tendency of
> coercion—*e.g.*, could the instruction given cause a juror to
> abandon his conscientious dissent and defer to the majority
> solely for the sake of reaching agreement?
>
> Thus, coercion is at the very heart of the inquiry of
> whether a departure from ABA standard jury instruction
> 5.4 is a "substantial departure." [*Id.* at 314.]

According to our Supreme Court in *Hardin*, "[w]here
additional language contains 'no pressure, threats, em-
barrassing assertions, or other wording that would
cause this Court to feel that it constituted coercion,' . . .
that additional language rarely would constitute a sub-
stantial departure." *Id.* at 315, quoting *People v
Holmes*, 132 Mich App 730, 749; 349 NW2d 230 (1984).
In addition, "whether the court required, or threatened
to require, the jury to deliberate for an unreasonable

length of time or for unreasonable intervals" is also relevant to whether there was coercion. *Hardin, supra* at 316. Furthermore, "an instruction that calls for the jury, as part of its civic duty, to reach a unanimous verdict and which contains the message that the failure to reach a verdict constitutes a failure of purpose, is a substantial departure ... because it tends to be coercive." *Id.*, citing *People v Goldsmith*, 411 Mich 555, 561; 309 NW2d 182 (1981).

Another factor that affects the potential coercive effect of a jury instruction is the timing of the instruction. Instructions that are given before the jury begins deliberating are less likely to have a coercive effect than supplemental instructions given to a jury that has already begun deliberating. *People v Pollick*, 448 Mich 376, 385; 531 NW2d 159 (1995). As our Supreme Court stated in *Pollick*,

> [i]t requires no special insight to see that there is a greater coercive potential when an instruction is given to a jury that already believes itself deadlocked. Instructions given to a jury that has not yet begun to deliberate are less likely to weigh on a dissenting juror, or to be understood as a request that a particular dissenting juror abandon the view that is preventing an otherwise unanimous jury from reaching its verdict. [*Id.*]

In the instant case, the trial court responded to the jury's declaration that it was at an impasse by giving supplemental instructions, which included those of ABA Standard 5.4, plus some additional supplemental instructions. While the trial court's recitation of ABA Standard 5.4 was not verbatim,[2] it was not, in and of itself, different enough to constitute a substantial departure. However, we find that the trial court's additional supplemental instructions did constitute a sub-

---

[2] The trial court's instruction was nearly verbatim to CJI2d 3.12.

stantial departure from ABA Standard 5.4. In making a
determination regarding coerciveness, "[w]e must ex-
amine the alleged coerciveness of the language em-
ployed, and we must examine it in the factual context in
which it was given." *Hardin, supra* at 321. Examining
the following supplemental instruction in the factual
context in which it was given, we find that the language
is coercive and constitutes a substantial departure from
ABA Standard 5.4:

> But in considering everything that I will read to you,
> also consider that if you are not truly able to reach an
> agreement on this in compliance with the instruction that
> I will give you, it will result in everybody coming back, the
> victim and the defendant included, and going through this
> entire process again with another jury. That is a difficult
> situation. It is, it is, you know, in terms of the justice that
> we are rendering in this case, I think is somewhat compro-
> mised if we are unable to reach a verdict one way or the
> other in this case.

This instruction is coercive in two respects. First, the
portion of the instruction that suggested to the jury
that justice would be compromised if the jury was
unable to reach a verdict and that "everybody" would
have to come back to go through the process again with
another jury is coercive because it contains the message
that a failure to reach a verdict constitutes a failure of
purpose. In *Goldsmith*, our Supreme Court held that
the trial court's instruction to the jury before the jury
began deliberating that " 'when a jury is unable to
reach a verdict, the jury has not accomplished its
purpose' " was a substantial departure, requiring rever-
sal. *Goldsmith, supra* at 560. In reversing, our Supreme
Court stated:

> Part of the instruction given in this case is essentially a
> call for the jury, as part of its civic duty, to reach a
> unanimous verdict and contains the message that a failure

to reach a verdict constitutes a failure of purpose. Nothing
in the standard instruction sanctions such a charge and we
conclude that the giving of such an instruction was revers-
ible error. [*Id.* at 561.]

The instruction in this case was similarly coercive be-
cause, by asserting that justice would be compromised if
the jury were unable to reach a verdict, it contained the
message that a failure to reach a verdict constitutes a
failure of purpose and tended to pressure the jury to reach
a unanimous verdict as part of its civic duty. Significantly,
the instruction in the instant case, unlike the instruction
in *Goldsmith*, was given after the jury had commenced
deliberations and after the jury had informed the trial
court that it had reached an impasse. Therefore, the
coercive effect was even greater in this case than in
*Goldsmith*. See *Pollick, supra* at 385.

The supplemental instruction is also coercive be-
cause it included language indicating that if the jury did
not reach a verdict, the victim would be subjected to
another trial. This instruction was improper because it
contained language that, in effect, pressured the jury to
make a decision on the basis of emotion or sympathy for
the minor victim. See *Hardin, supra* at 315. The victim
was a child who was allegedly a victim of sexual abuse.
Because they are so vulnerable, child victims of sexual
abuse evoke strong emotions and sympathies. The trial
court's remarks appealed to the jury's sympathy for the
child victim and pressured the jury to render a verdict
to avoid the necessity of the minor victim being sub-
jected to the trauma of another trial. For the trial court
to highlight the fact that the minor victim would be
required to endure another trial if the jury did not
render a verdict is coercive because of the pressure that
jurors might feel to reach a verdict to ensure that the
minor victim did not have to face this trauma. The
jury's sympathy for the minor victim is certainly under-

standable. Nevertheless, precisely because a child victim of sexual abuse evokes such emotion and sympathy, the trial court should not have emphasized the fact that if the jury was unable to reach a verdict, the minor victim would be subjected to the trauma of another trial. Such language was unduly coercive and constituted a substantial departure from ABA Standard 5.4.

In sum, we hold that the trial court's instructions to the jury were coercive because they contained the message that justice would be compromised if the jury failed to reach a verdict and therefore essentially included a call for the jury, as part of its civic duty, to reach a verdict and because the instructions pressured the jury to reach a verdict on the basis of emotion or sympathy for the minor victim. The fact that the instructions were given after the jury had begun deliberations and informed the trial court that it had reached an impasse magnified the coercive effect of the improper supplemental instructions. We therefore hold that the instructions constituted a substantial departure from ABA Standard 5.4 and constituted error requiring reversal. Accordingly, we reverse and remand for a new trial.

Reversed and remanded. We do not retain jurisdiction.

COOPER, J., concurred.

JANSEN, J. (*dissenting*). I respectfully dissent. Late in the afternoon of the second day of deliberations, the jury informed the trial court that it was at an impasse. The trial court observed that no rule dictated how long the jury would be allowed to deliberate, but noted that if the jury could not reach a verdict, another trial would be required. The trial court then commented that no

juror should change his or her views solely for the sake of reaching a verdict and read CJI2d 3.12, the deadlocked-jury instruction. The jury deliberated for an additional five hours after being instructed to continue deliberating. The jury convicted defendant of two counts of second-degree criminal sexual conduct, MCL 750.520c.

In *People v Sullivan*, 392 Mich 324, 335, 341-342; 220 NW2d 441 (1974), our Supreme Court adopted American Bar Association (ABA) Standard 5.4 for the instruction that should be read to a deadlocked jury. The *Sullivan* Court held that any substantial departure from that instruction would constitute error requiring reversal. *Id.* at 342. CJI2d 3.12 is based on ABA Standard 5.4.

Before reading CJI2d 3.12 to the jury, the trial court advised the jury that if it did not reach a verdict, a new trial would be required. However, immediately thereafter, the trial court emphasized that no juror should change his or her honest beliefs simply for the sake of reaching a verdict. The trial court then read CJI2d 3.12, which also cautions that a juror should not relinquish his or her honest beliefs simply to reach a verdict. Contrary to defendant's assertion, the jury did not return its verdict shortly after hearing these instructions. Instead, the jury deliberated for approximately five more hours. During this time span, the jury responded to an inquiry from the trial court by indicating that it wished to continue deliberating.

The trial court's remarks did not appeal to the jury's sense of civic duty and did not suggest a failure of purpose. *People v Hardin*, 421 Mich 296, 316; 365 NW2d 101 (1984). Nor did the trial court's remarks coerce the jurors by informing them that they were *required* to reach a verdict. Quite simply, the trial court's statement

that another trial would be necessary if the jury could not reach a verdict did not suggest that the jury should take a different approach to its deliberations. Accordingly, the remarks did not constitute a substantial departure from the instruction mandated by *Sullivan*. *People v Johnson*, 112 Mich App 41, 48; 314 NW2d 794 (1981) (holding that "the court's mention of the possibility of a successor jury was not a departure from the proper instruction mandated in *Sullivan*"); see also *People v Pollick*, 448 Mich 376, 380-388; 531 NW2d 159 (1995); *Hardin, supra* at 317-318.

Because the jury instructions given in this case were not improperly coercive, and because they did not substantially depart from CJI2d 3.12, I would affirm.